In re John Randall HAMMETT, a/k/a J.R. Hammett, Randy Hammett, John Hammett, Debtor.

TIMBERLINE SYSTEMS, INC., Plaintiff,

v.

John Randall HAMMETT, a/k/a J.R. Hammett, Randy Hammett, John Hammett, Defendant.

Bankruptcy No. 84–188–BK–J–GP. Adv. No. 84–145.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

May 28, 1985.

Hugh A. Carithers, Jr., Jacksonville, Fla., for plaintiff.

Peter C. Blinn, Ocala, Fla., for defendant.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

THIS MATTER was heard at trial on the issue of the dischargeability under 11 U.S.C. § 523(a) of a debt of $36,369, plus interest. The facts are simple: the defendant was in the business, through Computer Accounting Specialists, Inc., a corporation of which the debtor/defendant was the sole officer and shareholder, of retail sales of computer hardware and software. The plaintiff was a wholesale supplier of those items. At an earlier time in their relationship, the plaintiff had sold wholesale goods to the defendant on an open account basis but prior to the transactions giving rise to this adversary proceeding, the relationship had been changed at the plaintiff's instance to payment in cash on delivery. On or about February 2, and March 9, 1984, the defendant ordered goods from the plaintiff and when they were delivered simultaneously delivered checks aggregating the amount in controversy to the plaintiff. The checks were dishonored and have remained uncollected by the plaintiff. The defendant testified at trial that he intended and expected to make the checks good with the proceeds of sales of the equipment so obtained; the Court finds his testimony to be credible.

The issues raised are whether the plaintiff has shown the elements which the case law has set forth as necessary to support a dischargeability count under § 523 and whether the defendant is protected by the fact that he acted as an agent for a corporation, or alternatively, whether it is appropriate to pierce the corporate veil and find individual liability. The Court will not be required to address the corporate veil issue as it has determined for reasons set forth *infra*, that it cannot find a basis for liability on the part of any entity.

Bankruptcy courts have developed five elements which must all be proved in order for a plaintiff to prevail on a dischargeability count under § 523(a)(2):

1) That the defendant in fact made the representations;

2) That he knew at the time that he made them that they were false;

3) That he made them with the intention of deceiving the creditor;

4) That the creditor relied on those representations; and

5) That the creditor sustained the alleged loss and damage as the proximate result of those misrepresentations.

This Court at trial ruled in favor of the plaintiff on all elements necessary to support a judgment in its favor (without regard to the corporate veil question) with respect to all elements except intent to deceive. While it is not necessary to formally recede from our ruling that the debtor knowingly made a false representation, because receding would not change the outcome of this proceeding, we note that the language of a United States Supreme Court case which makes highly doubtful the correctness of that ruling. In *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 3092, 73 L.Ed.2d 767 (1982) a majority of a strongly divided Court faced with whether 18 U.S.C. § 1014, which makes it a crime to

knowingly make any false statement or report ... for the purpose of influencing in any way the action [certain enumerated financial institutions] upon any application, advance, purchase agreement, repurchase agreement, commitment, or loan....

is applicable to a check drawn on insufficient funds.

In that context, the Court says:

Although petitioner deposited several checks that were not supported by suffi-

cient funds, the course of conduct did not involve the making of a 'false statement,' for a simple reason: technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.' Petitioner's bank checks served only to direct the drawee banks to pay the face amounts to the bearer while committing petitioner to make good the obligations if the banks dishonored the drafts. Each check did not, in its terms, make any representation as to the state of the petitioner's bank balance.

We fully recognize that the cited decision was in the context of a criminal case and that the application of the rule on lenity may have had some impact on the outcome. Still, the Court's characterization of a check as a non-statement is so broad and unequivocal that this Court does not feel able to find that it is intended to be limited to a context of criminal prosecution. At least two other Bankruptcy Courts have reached the same conclusion, see *In Re Younesi*, 34 B.R. 828 (Bkrtcy.C.D.Calif. 1983), *In re Paulk*, 25 B.R. 919 (Bkrtcy.M. D.Ga.1982). The *Younesi* court, applying *Williams* concluded that, "... a personal check must be regarded as a promise to pay a certain sum of money, not a representation as to the state of the drawer's bank account.... To find that a nondischargeable debts results from the receiving of goods or services in exchange for an NSF check, it must be shown not only that the drawer knew the check to be backed by insufficient funds but that he knew or intended that he would not honor it himself." In other words, under *Younesi's* interpretation of *Williams*, in a bad check case, proof of the misrepresentation element cannot exist without proof of the intent element. Having heard the evidence in this case and evaluated the credibility of the witnesses, this Court expressly finds that the defendant had a good faith and reasonable intention to make the checks good at the time of their issuance.

(*Younesi* does not follow *Williams* for the express reason that an intervening opinion of the Bankruptcy Appellate Panel for the Ninth Circuit, which was binding on the *Younesi* court, held a bad check to be a per se misrepresentation and the *Younesi* court deemed itself bound by that case, *In re Kurdoghlian*, 30 B.R. 500 (Bkrtcy.App. Cal.1983). It is notable that that decision contains no citation to *Williams;* we have no way of knowing whether *Williams* was presented or known to that court. In any event, we are not bound by decisions of that appellate body and deem ourselves bound by *Williams*.)

Our application of *Williams* does not change the outcome in that even if no such case existed, we could not find intent to deceive of sufficient magnitude to support a finding of non-dischargeability sufficient to come within what this Court understands to be the intent of Congress in enacting that section of the Bankruptcy Code.

We reject the approach that the presentation of a check drawn on insufficient funds is *per se* probative of intent to deceive. If, at the time of making of the check, the defendant had a good faith and reasonable belief that he could make the check good before the drawee would present it for payment, then whatever deception is contemplated is of an insubstantial nature. The plaintiff correctly characterizes the defendant's intent, as being to lead the plaintiff to believe that the parties were on a C.O.D. basis, when the defendant's actual intention was that they be on an open account basis. This Court believes that the presentation of the NSF checks was aimed not at defrauding a creditor and keeping the proceeds but rather at keeping the defendant's business in operation when there was not alternative means for doing so known to him. We further believe that he fully intended to make the checks good. Clearly, his actions were neither aboveboard nor commendable; but, nonetheless, the defendant did not intend to obtain goods and retain the benefits through deception. He rather intended to buy time by issuing checks which he expected to make good. We find this to be qualitatively and quantitatively less than the intent to de-

ceive which we would need to find for the plaintiff to prevail. A judgment in favor of the defendant will, accordingly be entered.