In re Max **ETTINGER,** d/b/a **Computer Corner,** d/b/a **Modern Financial Marketing Services,** d/b/a **Microtronics,** Debtor.

**TAYLOR ELECTRIC
COMPANY, Plaintiff,**

v.

Max **ETTINGER,** d/b/a **Computer Corner,** d/b/a **Modern Financial Marketing Services,** d/b/a **Microtronics,** Defendant.

Bankruptcy No. 85–01998–R
Adv. No. 86–0567–R.

United States Bankruptcy Court,
E.D. Michigan.

Decided Jan. 21, 1987.

Roy Sgroi, Birmingham, Mich., for plaintiff.

Harry Ellman, Southfield, Mich., for defendant.

## SUPPLEMENTAL MEMORANDUM OPINION

STEVEN W. RHODES, Bankruptcy Judge.

### I.

This matter is before the Court following trial on the plaintiff's complaint. The plaintiff is Taylor Electric Company, a former supplier of the debtor/defendant, Max Ettinger, who did business as Computer Corner. The plaintiff specifically contends that a debt in the amount of $10,658.29 is non-dischargeable under 11 U.S.C. § 523(a)(2), as a result of the debtor's fraud. Specifically, the plaintiff contends that this debt arose from 30 checks which the debtor wrote without sufficient funds in his account from December 12, 1985 through December 23, 1985, which was approximately when the case was converted from Chapter 11 to Chapter 7. These checks were written pursuant to a COD arrangement between the parties when merchandise was delivered by common carrier from the plaintiff to the defendant. The defendant's checks were made payable to the plaintiff, and the defendant gave them to the carrier for forwarding to the plaintiff.

The defendant contends that there was no fraudulent intent in that he did not intend not to pay for the merchandise which he had received from the plaintiff.

### II.

Section 523(a)(2) generally provides that a discharge under § 727 does not discharge an individual debtor from any debt to the extent obtained by false pretenses, a false representation or actual fraud. 3 *Collier on Bankruptcy* ¶ 523.08 at 523–43 *et seq.* (15th ed. 1985):

> The frauds included in the portion of section 523(a)(3)(A) under discussion are those which in fact involve moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient. It must further affirmatively appear that such representations were

knowingly and fraudulently made, and that were relied upon by the other party. This authority further states:

Actual fraud, by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. *Id.* at 523–50.

█ In the case of *Martin v. Bank of Germantown*, 761 F.2d 1163 (6th Cir.1985), the court held that a party seeking an exception from discharge under § 523(a)(2) has the burden of proof by clear and convincing evidence. Accordingly, in this case the plaintiff, Taylor Electric, bears the burden of showing the defendant's fraud by clear and convincing evidence.

### III.

The evidence in this case establishes that the debtor filed a Chapter 11 petition on June 13, 1985. In each month while the case was in Chapter 11, the debtor suffered fairly significant losses. On November 20, 1985, this Court issued an order to show cause why the case should not be dismissed or converted to a case under Chapter 7, because the debtor had not filed a business plan, as previously ordered, and showed no reasonable likelihood of reorganization in light of his continuing losses. This matter was set for hearing on December 16, 1985.

On November 27, 1985, the debtor's landlord filed an application to evict the debtor from one of his locations. This matter was also set for hearing on December 16, 1985, concurrently with the order to show cause regarding conversion.

On the morning of December 12, 1985, the debtor wrote 19 checks to the plaintiff for merchandise that he received that morning. Later that afternoon in his attorney's office, the debtor signed a consent to convert this case to Chapter 7, and this consent was filed at 3:27 p.m. that same afternoon.

Nevertheless, despite this conversion, the debtor continued to do business. At the December 16, 1985 hearing, the landlord's application for eviction was granted and the Court indicated that it would enter an order converting the case.

On the next day, December 17, 1985, the debtor wrote four more checks to the plaintiff for merchandise received on that day. Likewise on December 18, 1985, the defendant wrote two more checks to the plaintiff. On December 19, 1985, an order of conversion was entered and an order granting the landlord's motion was entered. On December 23, 1985, the defendant wrote five more checks to the plaintiff for merchandise received by common carrier on that day.

A trustee was appointed by the Court on January 6, 1986. At that time, the plaintiff received the first notice that some of the checks had been returned due to insufficient funds, and then a short time later the plaintiff received an additional notice that the balance of the 30 checks had been returned for the same reason. When the plaintiff attempted to re-deposit these checks, they were returned because the debtor's accounts had then been closed.

### IV.

█ A number of these checks were written after the conversion of this case to Chapter 7; this is significant because any debt which arises from post-conversion checks would not be dischargeable under 11 U.S.C. § 727, regardless of fraud. Thus, the initial issue is whether the conversion occurred on December 12, 1985, when the debtor filed his consent to convert, or on December 19, 1985, when the Court entered the order of conversion. This issue is significant in addressing the debt arising from the checks written on December 17 and 18, 1985.

The Court concludes that this issue can be resolved by reference to the language of 11 U.S.C. § 1112, which provides:

(a) The *debtor may convert* a case under this chapter [11 USCS §§ 1101 et seq.] to a case under chapter 7 of this title [11 USCS §§ 701 et seq.] unless—

(1) the debtor is not a debtor in possession;

(2) the case originally was commenced as an involuntary case under this chapter [11 USCS §§ 1101 et seq.]; or (3) the case was converted to a case under this chapter [11 USCS §§ 1101 et seq.] other than on the debtor's request.

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the *court may convert* a case under this chapter [11 USCS §§ 1101 et seq.] to a case under chapter 7 of this title [11 USCS §§ 701 et seq.] or may dismiss a case under this chapter [11 USCS §§ 1101 et seq.], whichever is in the best interest of creditors and the estate, for cause, including—

\* \* \* \* \* \*

[Emphasis added.]

The distinction set forth in these two subsections is clear; under subsection (a), the *debtor* may convert the case[1] to a case under Chapter 7 (without any notice or hearing), while under subsection (b), the *court* may convert the case (on motion of a party in interest after notice and a hearing).

Accordingly, the Court concludes that this case was converted when the debtor filed his consent to conversion, which as noted, occurred on December 12, 1985 at 3:27 p.m., and that the subsequent conversion order was superfluous.

## V.

The effect of that conversion is set forth in 11 U.S.C. § 348, which provides:

(a) Conversion of a case from a case under one chapter of this title [11 USCS §§ 1 et seq.] to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

(b) Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 728(a), 728(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1146(a), 1146(b), 1301(a), 1306(a), and 1328(a) of this title [11 USCS §§ 701(a), 727(a)(10), (b), 728(a), (b), 1102(a), 1110(a)(1), 1121(b), (c), 1141(d)(4), 1146(a), (b), 1301(a), 1305(a), and 1328(a) ], "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, or 1307 of this title [11 USCS § 706, 112, or 1307] means the conversion of such case to such chapter.

Under § 727(b), the debtor is discharged from all debts that arose before the date of the "order for relief". Under § 348, quoted above, for purposes of § 727(b), the "order for relief" occurs upon conversion.

Accordingly, the debts which a debtor incurs after a conversion from a chapter 11 to a chapter 7 are not discharged under § 727. In the present case, the debts which arose from the NSF checks written after December 12, 1985, that is, those written on December 17, 18, and 23, are not discharged under § 727, regardless of the debtor's fraud.

## VI.

■ Thus, the issue before the Court narrows to whether those checks which were written on December 12, 1985 before the conversion at 3:27 p.m. are non-dischargeable as a result of the debtor's fraud. The Court concludes that the overwhelming weight of the evidence indicates that those checks were fraudulently written by the defendant, and therefore are excepted from the discharge pursuant to § 523(a)(2). The factors which lead the Court to this conclusion are as follows:

First, the checks were written on the very same day as the conversion. The debtor knew then that he did not have sufficient funds on deposit to cover those checks. In fact, he testified, that is why he

---

**1.** The Court assumes that a motion seeking an order of conversion is necessary in the three circumstances in which the debtor does not have a right to convert under § 1112(a); in such circumstances, the debtor would proceed under § 1112(b), and the conversion would occur when ordered by the Court.

wrote so many checks. Specifically, the debtor testified that he wrote so many checks so that some of the checks would clear and only some of them would be returned.

Moreover, the defendant testified that he relied on the time period it would take for the checks to be presented to his bank, and assumed that even though he did not have sufficient funds on deposit when he wrote these checks, he would later be able to deposit sufficient funds to cover them before they were presented. This assumption was without apparent basis.

Additional evidence of the debtor's fraudulent intent arises from the fact that he continued to do business after the conversion without the authority of the court, in blatant violation of the provisions of the Bankruptcy Code. The Court further notes that in the process of continuing the business, he used estate funds to pay on his own personal debts.

Accordingly, the Court concludes that the December 12th checks were fraudulently written by the debtor, and that the debt arising from these checks, which would otherwise be dischargeable under § 727, is non-dischargeable under § 523.[2]

Accordingly, the Court will enter judgment to the effect that the debt which arises from the checks written on December 12, 1985 is non-dischargeable as a fraudulent debt under 11 U.S.C. § 523(a)(2), and the debt which arises from the checks written after December 12, 1985 is non-dischargeable as a post-conversion debt under 11 U.S.C. § 727.

---

**2.** The Court notes by way of alternative holding that the post-conversion checks were also fraudulently written, for the reasons stated above in regard to the December 12th checks.