In re Eugene WEITZEL and Candace Weitzel, Debtors.

MIAMI CITIZENS NATIONAL BANK & TRUST CO., Plaintiff,

v.

Eugene F. WEITZEL, Defendant.

Bankruptcy No. 86–0167.
Related No. 86–00940.

United States Bankruptcy Court,
N.D. Ohio, W.D.

April 27, 1988.

J. Andrew Faulkner, Cincinnati, Ohio, for plaintiff.

Wm. H. White, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on Complaint to Determine Dischargeability of Debt. At the Trial, the parties had the opportunity to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the testimony, the documents which were admitted at Trial, and the arguments of counsel, as well as the entire record in this case. Based upon

that review, and for the following reasons, the Court finds that the debt for Ten Thousand Four Hundred and Seven Dollars and Six Cents ($10,407.06) should be NONDIS-CHARGEABLE.

## FACTS

The Debtor–Defendant, Eugene F. Weitzel, was President and sole shareholder of Weitzel AMC Jeep, Inc., a car dealership in Sidney, Ohio. Weitzel AMC Leasing, described as a "division" of Weitzel AMC Jeep, Inc., engaged in vehicle leasing.

The main lender for Weitzel AMC Jeep, Inc. was Bank One of Sidney, N.A., which loaned money to the Defendant under a floor plan financing arrangement. On September 28, 1979, Weitzel AMC Leasing purchased from Weitzel AMC Jeep, Inc., two 1979 Chevrolet Impala station wagons for Seven Thousand Forty-one Dollars and Ninety-four Cents ($7,041.94) each. The funds to purchase the two station wagons came from Miami Citizens National Bank & Trust Company, which received liens on the two vehicles. The two station wagons were leased for a period of time and then returned to the dealership.

In late May, 1980, Mr. Weitzel borrowed approximately Twenty Thousand Dollars ($20,000.00) from Bank One of Sidney, N.A., telling Bank One that he was going to purchase four cars and add them to the Weitzel AMC Jeep, Inc. floor plan. Instead, Mr. Weitzel paid the money to AMC Jeep Corporation on a prior existing debt. When Bank One learned that the money had been used to pay an existing debt, rather than to purchase inventory, Bank One attempted, unsuccessfully, to stop payment on the check. Mr. Weitzel testified that Bank One was "very unhappy" with what had transpired. *Transcript of Trial* at 23. On May 30, 1980, Bank One required Mr. Weitzel to convey to them a security interest in parts, inventory and shop equipment as a substitute for the four vehicles which Mr. Weitzel had represented would be available as security for the Twenty Thousand Dollars ($20,000.00) loan.

The two Chevrolet Impala station wagons were returned to Mr. Weitzel in late May or early June of 1980. The expiration of the leases terminated the lease payments and Mr. Weitzel testified that it would have been impossible for him to continue making his payments on the vehicles without any revenue coming in from the two cars. He stated that his idea was to pay off Miami Citizens by transferring the station wagons to his dealership floor plan financed by Bank One. The money from the two vehicles being added to the floor plan was to pay off the obligation to Miami Citizens.

Mr. Weitzel gave Miami Citizens a check for Ten Thousand Four Hundred Seven Dollars and Six Cents ($10,407.06) in return for a release of Miami Citizens' liens on the two vehicles. Mr. Weitzel testified that he informed Mr. Tim Hillman, a now deceased former employee of Miami Citizens, that he did not have sufficient funds in his account at that time, but once the two cars were put on the floor plan, the money from Bank One would cover the check. Mr. Weitzel testified that on June 4th or 5th, he talked to Mr. Bob Stewart at Bank One, and informed Mr. Stewart of the situation involving the check to Miami Citizens Bank. However, Bank One did not deposit any money from the two station wagons into Mr. Weitzel's checking account. Instead, the money from the two station wagons was applied to Weitzel AMC Jeep, Inc.'s preexisting debt to Bank One.

Evidence was presented which showed that Weitzel AMC Jeep had a large number of checks returned for insufficient funds in the months prior to the events which gave rise to this action. Additionally, counsel for Miami Citizens pointed out that in the two months before the release of liens by Miami Citizens, Weitzel AMC Jeep never had sufficient funds in its account to cover a check for Ten Thousand Dollars ($10,-000.00).

Weitzel AMC Jeep was closed in early July of 1980. The decision to close the dealership was apparently Bank One's, as the secured creditor.

On August 25, 1980, Miami Citizens filed a Complaint against Mr. Weitzel seeking a Judgment on the two promissory notes

which had been secured by the security agreement on the 1979 Chevrolet Impala station wagons. The Court of Common Pleas of Miami County granted Miami Citizens' Motion for Summary Judgment against Mr. Weitzel on the promissory notes, and a Judgment Entry was filed on December 23, 1980.

## LAW

Miami Citizens contends that their judgment against Mr. Weitzel is nondischargeable under 11 U.S.C. § 523(a)(2)(A), which states:

**§ 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

■ In order to demonstrate fraud or a false representation for purposes of Section 523(a)(2), a plaintiff must prove: 1) that the defendant made a representation, 2) that the defendant knew the representation to be false, 3) that it was made with the intent to deceive, 4) that the plaintiff reasonably relied on the representation, and, 5) that a loss was sustained as a result of the reliance. *In re Constantino*, 72 B.R. 231, 235 (Bankr.N.D.Ohio 1987).

■ Further, a creditor seeking an exception from the Debtor's discharge under 523(a)(2) must sustain their burden of proof by clear and convincing evidence. *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986). If there is room for an inference of honest intent, the question of fraud must be resolved in favor of the Debtor. *In re Mettetal*, 41 B.R. 80, 87 (Bankr.E.D.Tenn.1984).

■ Counsel for the Debtor argues that the debt should be dischargeable because Mr. Weitzel did not benefit from the transaction. When the station wagons which had served as Miami Citizens' collateral were sold, the money went to Bank One and not Mr. Weitzel. Therefore, Counsel contends Mr. Weitzel received no benefit from the release of the liens, and the debt should be dischargeable in bankruptcy. Such is not the law. There is no requirement that the Debtor benefit. Case law simply requires that the Creditor suffer some loss or injury as a result of the fraudulent conduct. *In re Gonzalez Seijo*, 76 B.R. 11, 13 (Bankr.D.Puerto Rico 1987); *In re Constantino, supra*, at 235; *In re Freeman*, 68 B.R. 904, 907 (Bankr.M.D.Pa. 1987); *In re Roeder*, 61 B.R. 179, 181 (Bankr.W.D.Ky.1986); *In re Burgstaler*, 58 B.R. 508, 512 (Bankr.D.Minn.1986).

Three of the five elements of fraud do not appear to be subject to serious dispute in the present case. First, it is clear that Mr. Weitzel made a representation to Miami Citizens. The Defendant testified that he told Miami Citizens that he would make the check good. Thus, even if the Court were to believe Mr. Weitzel's version of the events surrounding the tender of the check, there was a representation made.

■ The second element which the Defendant does not dispute is reliance. Miami Citizens relied on Mr. Weitzel's representation and released its liens on the two station wagons. They either relied on Mr. Weitzel's representation that he would make the check good, or, if he simply tendered the check and said nothing about the lack of funds in his account, they relied upon his tender of a check for the full amount due. In either case, Miami Citizens relied on a representation. "Reasonable reliance" is defined as reliance which is not "so unreasonable as to be no reliance at all". *In re Phillips*, 804 F.2d 930, 933 (6th Cir.1986). It is important to remember that Miami Citizens had a previous business relationship with Mr. Weitzel, and did not have full knowledge of the number of checks drawn on insufficient funds which Mr. Weitzel had written on his Bank One account. Accordingly, the Court finds that the reliance of Miami Citizens was reasonable under *Phillips, supra*.

The third element that the Defendant has not put into issue is that a loss was sus-

tained by Miami Citizens as a result of their reliance. As discussed previously, Mr. Weitzel argued that the absence of benefit should prevent the Plaintiff from succeeding in its Complaint. However, the Defendant has offered no rebuttal to the evidence presented by Miami Citizens showing that they suffered a loss as a result of their release of the liens on the two vehicles. Miami Citizens lost their status as a secured creditor, which translates into a significant loss in this Chapter 7 proceeding.

 Therefore, the question before the Court is whether or not Miami Citizens has met its burden of proving by clear and convincing evidence, the two remaining elements required to demonstrate fraud. As a starting point, it should be noted that the tendering of a check drawn on insufficient funds is not conclusive evidence of fraud *per se. In re Burgstaler, supra,* at 512–513; *In re Gonzalez Seijo, supra,* at 14. The Plaintiff must prove that Mr. Weitzel knew the check would not be good when he gave it to Miami Citizens, and that there was an intent to deceive. Based on the evidence presented, the Court finds that the check was given with the requisite fraudulent intent. Mr. Weitzel's testimony that he expected Bank One to deposit money from the two station wagons into Weitzel AMC Jeep's account was not a believable scenario given the recent history of dealings between Mr. Weitzel and Bank One. Mr. Weitzel's testimony would require the Court to find that he expected Bank One to continue normal financing after he had misapplied funds which were loaned specifically for new inventory. A review of Mr. Weitzel's history of writing bad checks, and the fact that in previous months he had never had enough funds in his account to cover the amount of the check to Miami Citizens, leads the Court to find that the check was issued with knowledge that the check was not good, and that it would not be made good at a later date. The Court further finds that the check was tendered with an intent to deceive Miami Citizens Bank.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that Miami Citizens National Bank and Trust Company's Complaint to Determine Dischargeability be, and is hereby, Granted.

It is FURTHER ORDERED that Eugene F. Weitzel's debt to Miami Citizens National Bank and Trust Company for Ten Thousand Nine Hundred Eighty-three Dollars and Forty-two Cents ($10,983.42), plus interest at the judgment rate, be, and is hereby, held Nondischargeable under 11 U.S.C. § 523(a)(2).