In re George J. NAHAS, Debtor.

COMERICA BANK–DETROIT, Plaintiff,

v.

George J. NAHAS, Defendant.

Bankruptcy No. 87–03976–R. Adv. No. 87–0845–R.

United States Bankruptcy Court, E.D. Michigan, S.D.

Nov. 3, 1988.

Richardo Kilpatrick, Rochester Hills, Mich., for plaintiff.

Stuart Brickner, West Bloomfield, Mich., for defendant.

## SUPPLEMENTAL MEMORANDUM OPINION

STEVEN W. RHODES, Bankruptcy Judge.

### I.

This matter is before the Court following trial on an adversary proceeding complaint filed by Comerica Bank against the debtor, George Nahas, pursuant to 11 U.S.C. § 523(a)(2)(A).[1]

Comerica had established a relationship with Nahas over many years, based upon his previous business ventures and his reputation in the Birmingham, Michigan, community. In June of 1984, Nahas opened a personal checking account at Comerica's Birmingham branch. Nahas paid his per-

---

1. This opinion supplements a decision given on the record in court on August 12, 1988.

sonal expenses, as well as the expenses of his business, Phone America, Inc., from this account.

Nahas regularly overdrew this account, beginning almost immediately after he opened it. Upon receipt of its daily overdraft report, the local Comerica branch would contact Nahas and request an immediate deposit to cover the outstanding balance. Through July 1985, Nahas did make prompt deposits to cover the overdrafts. In August and September of 1985, Nahas overdrew his account numerous times, and left an outstanding balance of over $12,000.

Comerica contends that this debt should be held nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), because Nahas knew that he could not cover these checks when he issued them. Comerica further contends that when Nahas wrote these checks, he represented that there were sufficient funds in his account to cover the checks.

Nahas contends that Comerica acquiesced in the ongoing overdraft situation. He further contends that he never had any intent to deceive the bank and always intended to repay.

## II.

### A.

11 U.S.C. § 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The plaintiff bears the burden of proving each of the elements necessary to establish the nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) by clear and convincing evidence. *In re Phillips (Coman v. Phillips)*, 804 F.2d 930 (6th Cir.1986).

In 3 *Collier on Bankruptcy*, ¶ 523.08[4] (15th ed. 1988), it is stated:

The frauds included in the portion of section 523(a)(2)(A) under discussion are those which in fact involves moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient. It must further affirmatively appear that such representations were knowingly and fraudulently made, and that were relied upon by the other party. It is not necessary that the false pretense or representation be made in writing in order that the debt be excepted from discharge. If the property (or services) was obtained prior to the making of any false representation, subsequent misrepresentations will have no effect upon the discharge of the debt. A mere promise to be executed in the future is not sufficient to make a debt nondischargeable, even though there is no excuse for the subsequent breach. A misrepresentation by a debtor of his intention, however, may constitute a false representation within the exception.

In 3 *Collier on Bankruptcy*, ¶ 523.08[5] (15th ed. 1988), it states:

Actual fraud, by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.

. . . .

... Failure of a commitment made in good faith to make payment does not constitute actual fraud. Neither representations of fact that will exist in the future nor mere promises, although false and intended to deceive, afford the basis of actionable fraud.

### B.

Several prior decisions address the issue of when debts incurred as a result of nonsufficient funds checks are nondischargeable under 11 U.S.C. § 523(a)(2).

In *In re Ettinger*, 68 B.R. 993 (Bankr.E.D.Mich.1987), the debtor had written several NSF checks within hours of converting

his Chapter 11 case to Chapter 7. This Court held:

> The Court concludes that the overwhelming weight of the evidence indicates that those checks were fraudulently written by the defendant, and therefore are excepted from the discharge pursuant to § 523(a)(2). The factors which lead the Court to this conclusion are as follows:
>
> First, the checks were written on the very same day as the conversion. The debtor knew then that he did not have sufficient funds on deposit to cover those checks. In fact, he testified, that is why he wrote so many checks. Specifically, the debtor testified that he wrote so many checks so that some of the checks would clear and only some of them would be returned.
>
> Moreover, the defendant testified that he relied on the time period it would take for the checks to be presented to his bank, and assumed that even though he did not have sufficient funds on deposit when he wrote these checks, he would later be able to deposit sufficient funds to cover them before they were presented. This assumption was without apparent basis.

68 B.R. at 996–97.

In *In re Lacey*, 85 B.R. 908 (Bankr.S.D. Fla.1988), the debtor's account with the plaintiff bank was overdrawn in the approximate amount of $24,000 within three months after the account was opened. As in the present case, the debtor assured the bank that he would cover those overdrafts and the bank accepted those assurances, because he had previously covered overdrafts without delay. The debtor tried to cover the overdrafts with deposits of checks from another bank, but those checks were also NSF. The court held:

> Under 11 U.S.C. 523(a)(2)(A) a debt will be excepted from discharge when a debtor makes a false representation when incurring a debt. To bar a discharge of a debt for a false representation or fraud the creditor must show the following: that the debtor made a false representation with the purpose and intention of deceiving the creditor; the creditor relied on such representation; his reliance was reasonably founded; and the creditor sustained a loss as a result of the representation. A debtor's intent to defraud may be inferred from the totality of the circumstances.

85 B.R. at 910 (citations omitted). The court sustained the complaint and denied the discharge as to the debt involved, concluding that the debtor knew that the checks lacked supporting funds and would not be honored. *Id.* at 910.

In *In re Weitzel*, 85 B.R. 753 (Bankr.N. D.Ohio 1988), the debtor gave a $10,000 check to the plaintiff bank to pay off liens on two vehicles in the debtor's automobile dealership inventory. The debtor told the bank that these checks did not have sufficient funds on account, but he assured the plaintiff bank that the checks would be covered when the vehicles were placed on the debtor's floor plan with another bank. However, that did not work out and the checks were eventually dishonored. The court held:

> In order to demonstrate fraud or a false representation for purposes of Section 523(a)(2), a plaintiff must prove: 1) that the defendant made a representation, 2) that the defendant knew the representation to be false, 3) that it was made with the intent to deceive, 4) that the plaintiff reasonably relied on the representation, and, 5) that a loss was sustained as a result of the reliance.
>
> . . . .
>
> Therefore, the question before the Court is whether or not Miami Citizens has met its burden of proving by clear and convincing evidence, the two remaining elements required to demonstrate fraud. As a starting point, it should be noted that the tendering of a check drawn on insufficient funds is not conclusive evidence of fraud *per se*. The Plaintiff must prove that Mr. Weitzel knew the check would not be good when he gave it to Miami Citizens, and that there was an intent to deceive. Based on the evidence presented, the Court finds that the check was given with the requisite fraudulent intent. Mr. Weitzel's testimo-

ny that he expected Bank One to deposit money from the two station wagons into Weitzel AMC Jeep's account was not a believable scenario given the recent history of dealings between Mr. Weitzel and Bank One.

85 B.R. at 755–56 (citations omitted).

*In re Younesi,* 34 B.R. 828 (Bankr.C.D. Cal.1983), involved a debt for three NSF checks totalling approximately $72,000 for securities purchased by the plaintiff stock brokerage for the debtor. The debtor had hoped to cover these checks with profits made on the securities, as a kind of gamble. Of course, this did not work out, and the debtor was not able to cover the checks. After reviewing the elements which the plaintiff is required to prove, the court resolved the specific fact issue before it as follows:

First, it is difficult if not impossible to determine the point at which the debtor realized his position to be hopeless, assuming such a realization ever occurred. The intention of an individual playing the market while insolvent is hardly to lose a large sum of money and then declare bankruptcy, or, as in the credit card cases, to acquire something on credit and then hide behind the exemptions of the Bankruptcy Code to escape payment. It is the intention of any losing gambler, to keep playing until his luck changes. No matter how far down he may be, there is always the hope of reversing the trend. This attitude may be quite unrealistic, but so long as it is genuinely held there does not exist the element of *scienter* characteristic of fraud or false pretenses. The bankruptcy courts are filled with debtors who have badly overextended their credit based on unrealistic appraisals of their future ability to pay, yet the debts so incurred are normally dischargeable in bankruptcy.

34 B.R. at 829 (citations omitted).

*In re Hammett,* 49 B.R. 533 (Bankr.M.D. Fla.1985), involved a debt for a NSF check to a supplier of the debtor. The evidence established that the debtor knew that the checks were not good when he issued them, but he testified that he intended to make them good based on the sales of the equipment that he purchased with the NSF checks. The court held:

We reject the approach that the presentation of a check drawn on insufficient funds is *per se* probative of intent to deceive. If, at the time of making of the check, the defendant had a good faith and reasonable belief that he could make the check good before the drawee would present it for payment, then whatever deception is contemplated is of an insubstantial nature. The plaintiff correctly characterizes the defendant's intent, as being to lead the plaintiff to believe that the parties were on a C.O.D. basis, when the defendant's actual intention was that they be on an open account basis. This Court believes that the presentation of the NSF checks was aimed not at defrauding a creditor and keeping the proceeds but rather at keeping the defendant's business in operation when there was not alternative means for doing so known to him. We further believe that he fully intended to make the checks good. Clearly, his actions were neither aboveboard nor commendable; but, nonetheless, the defendant did not intend to obtain goods and retain the benefits through deception. He rather intended to buy time by issuing checks which he expected to make good. We find this to be qualitatively and quantitatively less than the intent to deceive which we would need to find for the plaintiff to prevail.

49 B.R. at 535–36. *See also In re Burgstaler,* 58 B.R. 508 (Bankr.D.Minn.1986). *But see In re Mullin,* 51 B.R. 377 (Bankr. S.D.Ind.1985).

### C.

■ Based upon these authorities,[2] this Court concludes that in order to prevail on a nondischargeability claim under 11 U.S.C. § 523(a)(2)(A), the plaintiff must prove by clear and convincing evidence:

---

**2.** *See also In re Ward (Manufacturer's Hanover Trust v. Ward* ), 857 F.2d 1082 (6th Cir.1988); and *In re Phillips (Coman v. Phillips* ), 804 F.2d 930, 932 (6th Cir.1986).

First, that the debtor made a statement or representation.[3]

Second, that this statement or representation was false.

Third, that the statement or representation was made with the intent to deceive, and with either knowledge that it was false or gross recklessness as to its truth.

Fourth, that the plaintiff relied on this statement or representation.

Fifth, that the reliance was reasonable.

Sixth, that the plaintiff suffered a loss.

Seventh, that the loss was proximately caused by the debtor's conduct.

### D.

As noted, the plaintiff must establish by clear and convincing evidence that the debtor intended to deceive the plaintiff, and that the debtor either knew that the representation was false or made the representation with gross recklessness as to its truth.[4] The mere issuance of an NSF check, even with the knowledge of insufficient funds on account, does not establish this element. *In re Weitzel*, 85 B.R. 753 (Bankr.N.D.Ohio 1988); *In re Hammett*, 49 B.R. 533 (Bankr.M.D.Fla.1985). If the evidence further shows that the debtor realistically intended to cover the check, then there is no intent to deceive. *In re Younesi*, 34 B.R. 828 (Bankr.C.D.Cal.1983); *In re Hammett*, 49 B.R. 533 (Bankr.M.D.Fla. 1985). The Court must consider all of the circumstances in determining the debtor's intent. *In re Lacey*, 85 B.R. 908 (Bankr.S. D.Fla.1988).

More specifically, the debtor may deny knowing that there were insufficient funds on account; in that event, the Court would determine the credibility of such testimony. Or, as here, the debtor may admit that knowledge, but assert an intent to cover the NSF check and therefore a lack of intent to deceive. Of course, the debtor's intent to cover the check must have some reasonable basis; a mere hope to repay, without any basis in reality, is insufficient. In each case, the Court should weigh the course of the debtor's conduct in issuing the NSF check against the reasonableness of his expectation that the check would be covered. In weighing these considerations, the Court must keep in mind that the plaintiff retains the burden of proving the debtor's intent to deceive, and that the burden never shifts to the debtor to establish his intent to cover the check.

### E.

Nahas testified that he knew that there were insufficient funds to cover the NSF checks at issue when he wrote them. Moreover, Nahas knew that Comerica would honor the checks because it trusted him to cover the overdrafts, as he had assured he would. He further testified that he stopped writing checks in August 1985, but he continued to make deposits to cover the NSF checks. During this time period, he was vigorously attempting to franchise Phone America, Inc. He was also pursuing the sale of some shares in the corporation to raise capital, and he even had a sales agreement.

---

**3.** Comerica cites three cases in support of its position that Nahas's checks carried an implied representation that there were sufficient funds on account to cover the checks. *See In re Perkins*, 52 B.R. 355 (Bankr.M.D.Fla.1985); *In re Kurdoghlian*, 30 B.R. 500 (9th Cir. B.A.P.1983); and *In re Tabers*, 28 B.R. 679 (Bankr.W.D.Ky. 1983). *But see Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982); *In re Hunter*, 83 B.R. 803 (M.D.Fla.1983); *In re Jenkins*, 61 B.R. 30 (Bankr.D.N.D.1986); and *In re Hammett*, 49 B.R. 533 (Bankr.M.D.Fla.1985).

Here, it is clear that the only representation that Comerica relied upon was Nahas's assurance that he would cover the overdrafts. Accordingly, it is unnecessary to determine whether the checks carried any implied representations.

**4.** In *In re Ward*, 857 F.2d 1082 (6th Cir.1988) and *In re Phillips*, 804 F.2d 930 (6th Cir.1982), the Sixth Circuit used this formulation of the intent element under 11 U.S.C. § 523(a)(2)(A). However, it is hard to imagine a circumstance in which the debtor has the requisite intent to deceive without either knowledge that the representation was false or gross recklessness as to its truth. Thus, this formulation is probably redundant. In any event, without deciding the issue specifically, this Court will use the shorthand version, "intent to deceive."

However, two circumstances led to Nahas's financial collapse. First, Phone America experienced substantial inventory losses. Second, he was required to expend substantial attorney fees to defend an employee's lawsuit. Thus, he testified that he never intended to deceive the bank.

The relevant bank statements establish that the last date on which Nahas had a positive balance in his account was August 2, 1985. After that date, the statements reflect the following activity:

| Date 1985 | Checks | Deposits |
|---|---|---|
| 7/30–8/2 | $9,127.25(12) | |
| 8/5 | | 353.36 |
| 8/6 | | 228.43 |
| 8/7 | 2,300.00 | 773.76 |
| 8/8 | | 207.88 |
| 8/9 | | 377.04 |
| 8/15 | | 114.28 |
| 8/15 | | 145.38 |
| 8/15 | | 475.39 |
| 8/16 | | 519.51 |
| 8/19 | | 421.66 |
| 8/23 | 300.00 | 645.23 |
| 9/6 | 5,422.92 | |
| 9/13 | | 650.90 |
| 9/19 | | 649.03 |
| 9/24 | | 862.35 |
| 9/26 | | 301.12 |
| 10/1 | | 633.42 |
| 10/4 | | 307.36 |
| 10/15 | | 1,838.37 |
| 10/22 | | 1,401.64 |
| 11/5 | | 1,694.49 |

As of November 5, 1985, the NSF checks exceeded the deposits by $2,877.13. Accordingly, the Court concludes that the dischargeability issue relates to that debt.[5]

### IV. *Conclusions*

#### A.

The Court concludes that Comerica has proven by clear and convincing evidence the following facts:

First, Nahas made a representation that all overdrafts would be covered within a few days of their payment by the bank.

Second, beginning in August 1985, that representation was false in that Nahas was no longer able to cover all of his overdrafts within a few days.

Third, Comerica relied upon Nahas's representation in paying the overdrafts. Nahas admits that Comerica covered the overdrafts based on the assurances he had given and on their relationship of trust.

Fourth, Comerica's reliance was reasonable. Before August 1985, Nahas had always covered his overdrafts, and it had no basis upon which to believe that Nahas would not be able to continue doing so.

Fifth, Comerica suffered a loss in the amount of $2,877.13.

Sixth, Nahas's conduct was the proximate cause of Comerica's loss.

#### B.

■ The real issue is whether Comerica has proven by clear and convincing evidence that Nahas intended to deceive the bank in connection with the NSF checks written by him and honored by the bank. The Court concludes that Comerica has not met its burden of proof on this element. It is reasonably clear that in order to pay his debts, Nahas intended to keep his business going and to sell franchises. Therefore, when Nahas wrote the NSF checks, his expectations were neither hopeless nor so unrealistic that the Court can conclude that he did not reasonably entertain them.

Further evidence of Nahas's lack of intent to defraud, and lack of moral turpitude, is found in his conduct after he wrote the last NSF check on September 6, 1985. Between September 13 and November 5, 1985, Nahas made nine deposits totalling $8,338.68; this was plainly a substantial and bona fide attempt to reduce his debt to the bank. As noted above, Nahas's efforts fell short by only $2,877.13. If Nahas had

---

**5.** In this time period, the monthly bank statements disclosed negative balances substantially in excess of this amount. And, as noted above, the final negative balance exceeded $12,000.

This occurred for two reasons. First, the final negative balance included returned check fees, overdraft fees, service charges, credit card chargebacks, and other miscellaneous debits. Second, it included monthly automatic debits of approximately $2,000 to pay Comerica on other outstanding loan accounts.

The parties have not addressed the dischargeability issues arising from these debits. Accordingly, the Court will not consider them.

intended to deceive Comerica when he wrote these NSF checks, it is unlikely that he would have made such deposits.

Accordingly, the Court concludes that Comerica has failed to establish Nahas's intent to deceive by clear and convincing evidence.

Therefore, the complaint must be dismissed.