269 N.J. Super. 481 (1994)
635 A.2d 1013
316 49 ST. ASSOCIATES LIMITED PARTNERSHIP, A LIMITED PARTNERSHIP OF NEW JERSEY, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
GERMANIA GALVEZ, DEFENDANT-APPELLANT, CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1993.
Decided January 5, 1994.
*482 Before PRESSLER, DREIER and BROCHIN, JJ.
Ira Karasick argued the cause for appellant-cross-respondent (Ira Karasick, attorney; Deborah Masker Edwards, on the brief).
*483 Richard B. Nashel argued the cause for respondent-cross-appellant (Nashel & Nashel, attorneys; Mr. Nashel, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant tenant appeals from a grant of summary judgment in favor of plaintiff landlord ejecting her from her apartment. Plaintiff cross-appeals from the trial court's refusal to include unpaid option charges and increased attorney's fees in the judgment.
Plaintiff, 316-49 St. Associates Limited Partnership, is the owner of an eleven-unit apartment building in Union City known as Thessalli Terrace. On June 28, 1988, plaintiff registered its conversion plan for the property with the Department of Community Affairs. Plaintiff has not yet however, established the condominium form of ownership for the property by recording the master deed. It is the recordation of the master deed that establishes the condominium form of ownership. N.J.S.A. 46:8B-8; Veltri v. Norwood, 195 N.J. Super. 406, 413, 479 A.2d 931 (App.Div. 1984).
On September 1, 1990, defendant, Germania Galvez, signed an "Apartment Lease and Option to Purchase." The agreement provided that defendant would live in the apartment for a term of one year, and at the end of the term defendant would have the right to purchase the apartment for $110,000, receiving credit for her option payments. The agreement also provided that if defendant did not exercise the option at the end of the period, she would not be entitled to renew the agreement.
During the original term of the lease, defendant paid $387.85 per month in rent plus $229.17 a month for the purchase option, making her total monthly payment $617.02. The Rent Leveling Board of Union City has certified that the maximum allowable rent during this time was approximately $420. Defendant also paid a security deposit of $925.54, which represents approximately *484 one and one-half times her combined monthly rent and option payment.
On August 31, 1991, defendant was presented with a renewal agreement for the one-year period beginning September 1, 1991 and ending August 31, 1992. Defendant refused to sign the agreement, but continues to occupy the apartment with her three children. Defendant has certified that at the time she entered into the agreement she was employed as a factory worker, but soon thereafter she was laid off and has since lived on public assistance. When the agreement was signed, the mortgage contingency clause was not completed, and no inquiry was made into defendant's financial status. The most cursory inquiry would have revealed defendant's total inability to pay $110,000 at the time of the initial lease, the renewal, or in the foreseeable future, with or without a resort to available credit.
On or about November 20, 1991, plaintiff mailed to defendant a notice to quit and demand for possession, demanding that defendant vacate the apartment by November 30, 1991. Defendant did not comply, and on January 13, 1992, plaintiff filed a complaint for ejectment, damages, attorney's fees and costs. Defendant did not answer and judgment by default was entered in favor of plaintiff on March 9, 1992. A writ of possession was subsequently issued.
On or about February 24, 1992, defendant filed a late answer and counterclaim alleging that plaintiff had violated the Union City Rent Control Ordinance as well as the Consumer Fraud Act. On April 27, 1992, the judge signed an order to show cause why the default judgment should not be vacated, and on June 24, 1992, the default judgment was vacated, conditioned on defendant's payment of all rent and option payments as well as attorney's fees.
Plaintiff then moved to vacate the June 24th order and defendant moved for reconsideration. Plaintiff's motion was denied; defendant's motion was granted, and the June 24, 1992 order was modified to relieve defendant of the obligation to make option payments during the pendency of the action.
*485 After plaintiff filed an answer to defendant's counterclaim, the parties filed cross-motions for summary judgment which were heard on November 20, 1992. The trial court granted plaintiff's motion, finding that the parties entered into a binding lease and option agreement, that defendant breached that agreement by failing either to renew the agreement or vacate the apartment, and that no legal excuse existed for the breach. The judge stayed the order pending appeal, conditioned upon defendant paying all outstanding option payments.
We stayed the order of the trial court on defendant's interlocutory motion. The stay was conditioned on defendant's compliance with the modified June 24, 1992 order requiring defendant to pay only the base rent. As final judgment had not yet been entered, we remanded for its entry. The final judgment provided that possession of the apartment be returned to plaintiff and that defendant pay $6,718.40 (representing double defendant's rent, calculated at $419.90 a month, for December 1991 through March 1993) and $2,900 for attorney's fees and costs.
Although plaintiff successfully moved for summary judgment on its complaint for ejectment and damages, R. 4:46-2 provides that summary judgment is appropriate only if "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." See also Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954). Here there were not only questions of fact regarding the nature and legality of the option payments sufficient to defeat plaintiff's motion for summary judgment, the facts were so clearly in defendant's favor on this issue that summary judgment should have entered for defendant.
Plaintiff's initial action was for ejectment. In New Jersey, an action of ejectment is governed by N.J.S.A. 2A:35-1. Marder v. Realty Constr. Co., 84 N.J. Super. 313, 320, 202 A.2d 175 (App. Div.), affirmed, 43 N.J. 508, 205 A.2d 744 (1964). N.J.S.A. 2A:35-1 provides "[a]ny person claiming the right of possession of real property in the possession of another, or claiming title to such real *486 property, shall be entitled to have his rights determined in an action in the superior court."
Plaintiff argues that because defendant did not renew the agreement or vacate the premises, plaintiff is entitled to pursue an action in ejectment rather than under the Anti-Eviction Act, N.J.S.A. 2A:18-61.1. The trial judge agreed and granted summary judgment in favor of plaintiff. By so ruling, however, the trial judge erroneously gave effect to the nonrenewal provision of the agreement.
The nonrenewable nature of the lease is addressed at several places in the agreement. Paragraph 23 provides: "Tenant has absolutely no right to renew this lease and Tenant acknowledges that Landlord entered into this lease because of Tenant's express representation of an intention to purchase the apartment pursuant to the terms of paragraph 29." Also paragraph 5, which addresses the disposition of interest on the security deposit upon renewal of the agreement, states "however, the Landlord shall be under no obligation of any kind to renew this lease." The agreement does provide however, that the lease and option may be renewed upon the mutual agreement of the landlord and the tenant:
If, prior to the expiration date of the Lease, both Landlord and Tenant mutually agree to renew or extend the one (1) year term of the Lease, then in such event the Option to Purchase shall also be renewed or extended for the same period as the Lease extension or renewal, except that the Landlord may increase either or both the option purchase price and the monthly consideration to be paid for the option during each renewal or extension term.
Residential tenants are guaranteed the right to renew their leases. N.J.S.A. 2A:18-61.3a states that "[n]o landlord may evict or fail to renew any lease of any premises covered by [N.J.S.A. 2A:18-61.1] except for good cause as defined in [N.J.S.A. 2A:18-61.1]." Furthermore, N.J.S.A. 2A:18-61.4 provides that "[a]ny provision in a lease whereby any tenant covered by [N.J.S.A. 2A:18-61.1] agrees that his tenancy may be terminated or not renewed for other than good cause as defined in [N.J.S.A. 2A:18-61.1], or whereby the tenant waives any other rights under this act shall be deemed against public policy and unenforceable."
*487 The premises and defendant's tenancy are clearly covered by N.J.S.A. 2A:18-61.1 which states:
No lessee or tenant or the assigns, undertenants or legal representatives of such lessee or tenant may be removed by the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes, other than (1) owner-occupied premises with not more than two rental units or a hotel, motel or other guest house or part thereof rented to a transient guest or seasonal tenant; (2) a dwelling unit which is held in trust on behalf of a member of the immediate family of the person or persons establishing the trust, provided that the member of the immediate family on whose behalf the trust is established permanently occupies the unit; and (3) a dwelling unit which is permanently occupied by a member of the immediate family of the owner of that unit, provided, however, that exception (2) or (3) shall apply only in cases in which the member of the immediate family has a developmental disability, except upon establishment of one of the following grounds as good cause....
Plaintiff contends that the Anti-Eviction Act does not apply to defendant. Plaintiff does not allege that the premises or the tenancy fall under one of the enumerated exceptions to the act, but rather that the statute is inapplicable to actions for ejectment. This assertion is contradicted by the plain language of N.J.S.A. 2A:18-61.3 and 2A:18-61.4 which clearly states that they are applicable to any lease of premises covered by N.J.S.A. 2A:18-61.1. The focus is not on the remedy but on the premises leased.
Plaintiff nevertheless argues that the court must enforce the parties' agreement as written. In support of this argument, plaintiff cites Mury v. Tublitz, 151 N.J. Super. 39, 44, 376 A.2d 547 (App.Div. 1977) for the proposition that "[c]ourts are required to enforce contracts, including leases, according to their terms in the absence of some superior contravening policy." It appears however, that the policy expressed by the Legislature in deeming nonrenewal clauses unenforceable is precisely the type of "superior contravening policy" to which we referred in Mury.
Likewise, plaintiff's argument that retroactive invalidation of the contract would deprive plaintiff of property rights under the state and federal constitutions is without merit. The lease is not being retroactively invalidated. The nonrenewal provision of the lease was never valid as it violated N.J.S.A. 2A:18-61.3a and 2A:18-61.4.
*488 Finally, plaintiff argues that even if the agreement is found to be invalid, the court should still enforce it under a theory of promissory estoppel. This issue was not reached by the trial judge, since he found the lease fully enforceable. As previously noted, however, the nonrenewal provision of the lease is deemed by statute to be against public policy and therefore unenforceable. It cannot be saved by any theory of estoppel.
Ordinarily, the invalidation of the non-renewal provision would not leave plaintiff without a remedy. If defendant had been offered a reasonable renewal which she refused to sign, she could have been evicted upon proper notice under N.J.S.A. 2A:18-61.1i.[1] However, since we here determine that the renewal terms were unreasonable because the "option payments" raised the rent over the amount permitted under the Union City rent control ordinance, this issue is moot.
As previously noted, plaintiff apparently offered defendant a chance to renew her lease and option for one year consistent with the language of the agreement. It appears that defendant was willing to renew the rental portion of the agreement, but objected to the continued option payments which she asserted were merely a way to circumvent the rent control ordinance. Plaintiff argues that the option payments are necessary as it wants to rent only to tenants who are interested in purchasing a unit. Given the lack of financial investigation on plaintiff's part, however, this assertion appears to be a sham.
It is well settled that a landlord may not charge rent in excess of that fixed by the applicable rent control ordinance. Jamouneau v. Harner, 16 N.J. 500, 513, 109 A.2d 640 (1954), cert. denied, 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955); Lutz v. *489 Goldberg, 7 N.J. Super. 288, 292, 73 A.2d 65 (App.Div. 1950); see also Tave v. Furst, 182 N.J. Super. 497, 500, 442 A.2d 658 (Dist.Ct. 1981) (tenant's knowing waiver of rent control limitation is void as contravening public policy considerations). It appears that the option payments were merely a way to circumvent the rent control ordinance and could not legally be included in the original or renewal agreement.
Even the lease agreement in certain instances treated the option payments as rent. The option payments are deemed to be "additional rent" under the lease, and failure to pay the option payments subjects a tenant to late fees and eviction. Furthermore, defendant paid a security deposit of $925.54 which represents approximately one and one-half times the amount of her monthly rent and option payment combined. If the option payment is not rent, the security deposit is violative of N.J.S.A. 46:8-21.2 which provides that "[a]n owner or lessee may not require more than a sum equal to 1 1/2 times 1 month's rental according to the terms of contract, lease, or agreement as a security for the use or rental of real property used for dwelling purposes."
Defendant also argues that the option cannot be legitimate since the building has not yet been converted to the condominium form of ownership and plaintiff is not obligated under the lease to convert the building. Further challenging the legitimacy of the underlying intent of the option provisions, defendant points to the lack of credit checking before she rented, and dispensing with the usual formalities involved in a sale of real estate. Defendant also notes that although the Lease and Option Agreement has a mortgage contingency, it was never completed.
Ordinarily, whether the option payments constitute rent should be determined by reference to the Union City Rent Control Ordinance. See Ivy Hill Park Apartments v. Sidisin, 258 N.J. Super. 19, 609 A.2d 54 (App.Div.), certif. denied, 130 N.J. 397, 614 A.2d 620 (1992) (adopting rent control ordinance's definitions to determine whether property damage assessed as additional rent violates the ordinance). Here, however, no such remand of this *490 issue is necessary. While it is theoretically possible that defendant could have won the lottery and then decided to purchase the apartment,[2] such circumstances were not within the parties' contemplation. On the facts before the trial judge, there was no legitimate expectation of purchase, and the option payments were clearly additional rent. The option payments are thus determined to be rent and therefore violative of the ordinance. Also, they can no longer be collected as option payments, since we have determined that the landlord has fraudulently denominated the payments as something other than rent. These previous "option" payments must be refunded. Unless or until the actual rental payments are increased to the level permitted by the Union City Rent Leveling Board, defendant is obligated to pay only the rental portion of the payments set forth in her lease.[3] We express no opinion when and how the landlord may raise the rent to that permitted by the local ordinance.
Defendant's counterclaim in the initial action contained a claim for damages under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. In its November 20, 1992 motion, plaintiff asked that defendant's counterclaim be dismissed for failure to state a claim upon which relief can be granted under R. 4:6-2(e), or alternatively, that plaintiff be granted summary judgment on that claim in accordance with R. 4:46. The trial court granted plaintiff's motion *491 for summary judgment in its entirety. On appeal, defendant asks that her counterclaim be restored but does not otherwise address the applicability of the Consumer Fraud Act. Plaintiff contends that the act does not apply to its actions.
In her memorandum of law in opposition to plaintiff's motion, defendant alleged that the lack of a mortgage contingency, the failure to perform a credit check, and the fact that the master deed had not been recorded or any units sold indicated that plaintiff never intended that defendant would or could purchase a unit, but instead plaintiff used the option to circumvent the Anti-Eviction Act and the Union City Rent Control Ordinance. Defendant also contended that the incorrect inclusion of the sixty-day termination language[4] was a misrepresentation under the Consumer Fraud Act.
The Consumer Fraud Act, N.J.S.A. 56:8-2, provides that
[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.
The Consumer Fraud Act has been held applicable to the landlord-tenant relationship. 49 Prospect Street Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J. Super. 449, 547 A.2d 1134 (App.Div. *492 1988). Plaintiff concedes the applicability of the act to the landlord-tenant relationship, but argues that its actions are not condemned commercial practices under the act and that summary judgment was therefore appropriate.
Summary judgment is appropriate when there is no genuine issue as to any material fact. R. 4:46-2; Judson, supra, 17 N.J. at 73-75, 110 A.2d 24. In this case, there are sufficient questions of fact regarding the legality of the option payments, the inclusion of the 60-day termination language and the circumstances surrounding the signing of the agreement[5] to defeat plaintiff's motion for summary judgment. Defendant's counterclaim is therefore remanded for trial.
Plaintiff argues that the trial court abused its discretion by awarding it only $2,900 in attorney's fees. As we have here vacated the judgment for plaintiff, and directed the entry of judgment for defendant, the attorney's fee award is likewise vacated. The issue is moot.
We vacate the summary judgment for plaintiff, and direct the entry of summary judgment for defendant on the issue of the rental payments, as noted herein. The dismissal of defendant's consumer fraud counterclaim is vacated, and the matter is remanded to the Law Division for further proceedings.
NOTES
[1] It is good cause for eviction if "[t]he landlord or owner proposes, at the termination of a lease, reasonable changes of substance in the terms and conditions of the lease, including specifically any change in the term thereof, which the tenant, after written notice, refuses to accept ..." N.J.S.A. 2A:18-61.1i.
[2] Before transferring ownership of the unit, the owner would have been required to record the master deed. Plaintiff notes that the practice of the industry is not to record the master deed until the first unit is sold. The existence of such a practice would have been a factual issue defeating summary judgment had the transaction not been such an obvious sham.

If plaintiff chooses to evict defendant based on conversion of the building to the condominium form of ownership, plaintiff must proceed under the Anti-Eviction Act. Defendant commenced her tenancy prior to the recordation of the master deed and is therefore a preconversion tenant entitled to the protection of N.J.S.A. 2A:18-61.1k and N.J.S.A. 2A:18-61.2g. Kabakian v. Kobert, 188 N.J. Super. 517, 520, 457 A.2d 1229 (App.Div. 1983).
[3] N.J.S.A. 2A:18-61.1a provides that it is good cause for eviction if "[t]he person fails to pay rent due and owing under the lease whether the same be oral or written."
[4] N.J.S.A. 2A:18-61.9 mandates that the following language be included in any lease commenced after a building has been converted to a condominium by recordation of the master deed:

This building (park) is being converted to or is a condominium or cooperative (or fee simple ownership of the several dwelling units or park sites). Your tenancy can be terminated upon 60 days' notice if your apartment (park site) is sold to a buyer who seeks to personally occupy it. If you move out as a result of receiving such a notice, and the landlord arbitrarily fails to complete the sale, the landlord shall be liable for treble damages and court costs.
As previously noted, defendant is a pre-conversion tenant and inclusion of this language is incorrect as defendant is entitled to the protection of N.J.S.A. 2A:18-61.1k and N.J.S.A. 2A:18-61.2g.
[5] Defendant has certified that she does not read or speak English and that when she signed the lease and option agreement, the superintendent told her "not to worry about the lease."