In re Edward S. COHEN, Debtor.

Hilda DE LA CRUZ, Nelfo C. Jimenez, Maria Morales, Gloria Sandoval, Hector Santiago, Santia Santos, Elba Saravia, Elvia Siguenzia, Enilda Tirado, Plaintiffs,

v.

Edward S. COHEN, Defendant.

Bankruptcy No. 90–25340.
Adv. No. 91–2094.

United States Bankruptcy Court,
D. New Jersey.

June 19, 1995.

Hudson County Legal Services Corp. by Gregory G. Diebold, Jersey City, NJ, for plaintiffs.

Monaghan, Rem & Zeller, P.C. by Robert Zeller, Hackensack, NJ, for debtor-defendant.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

The matter before the Court is to determine damages in the instant adversary proceeding. The following constitutes the Court's findings of fact and conclusions of law.

### Facts

On November 12, 1993, the Court conducted a trial in the matter of *Hilda De La Cruz et al. v. Edward S. Cohen*, Adv. No. 91–2094.

On October 24, 1994, the Court issued a written opinion, 185 B.R. 171 (the "Opinion"),[1] rendering the debt in question nondischargeable under § 523(a)(2)(A). As to damages, the Court noted that a hearing would be held to make the determination on the amount.

For purposes of the damages hearing, the following parts of the Opinion are pertinent:

---

**1.** For a full statement of the facts, see the Opinion.

(i) None of the Plaintiffs were born in the continental United States or spoke English as their native language or graduated college, *see* Opinion, at pp. 173–74;

(ii) The parties agreed that the written record of the Hoboken Rent Leveling Board represents the determination that the Board made with respect to the alleged rental overcharges, *see id.*, at p. 175;

(iii) Section 523(a)(2)(A) requires proof of actual fraud, which meant that Plaintiffs had to establish by a preponderance of the evidence that: (1) Edward S. Cohen (the "Debtor") obtained money, property or services through a material misrepresentation; (2) the Debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the Debtor made the misrepresentation with intent to deceive; (4) the Plaintiffs reasonably relied on the representation; and (5) the Plaintiffs suffered loss, which was proximately caused by the Debtor's conduct; *see id.*, at p. 177.

The Court ruled the debt in question nondischargeable under § 523(a)(2)(A) because the Court found, *inter alia*, that: (i) the Debtor made a misrepresentation regarding the amount of rent, *see id.*, at p. 177; (ii) the Plaintiffs reasonably relied on the representation that the amount of rent they were asked to pay was within the bounds of the law, *see id.*, at p. 177; and (iii) the Debtor's reckless disregard for the truth satisfied both the knowledge and intent to deceive elements of actual fraud, *see id.*, at pp. 178–79.

On December 9, 1994, the Plaintiffs filed a brief with respect to damages ("Plaintiffs Brief"). Firstly, the Plaintiffs note that there is a dispute as to the total amount of rent the Plaintiffs paid, and thus, the total overpayment. *See* Plaintiff's Brief, at 1. The Plaintiffs, however, concede that the amount should be reduced and have attached a table setting forth the reduced calculations. *See id.*, at 1–2 and Appendix A (damages table).

The Plaintiffs argue that the principle legal issue is the applicability of the New Jersey Consumer Fraud Act (the "Act").[2] The Act provides for imposition of treble damages for violations of the Act. The Plaintiffs contend that the Act is applicable to the instant case, and therefore, ask this Court to award them treble the amount of the overpayments.

On March 17, 1995, the Debtor submitted a brief with respect to damages ("Debtor's Damages Brief"). First, the Debtor argues that the overpayment calculation previously determined by the Hoboken Rent Leveling Board (the "Board") was in error. Next, the Debtor asserts that the "sole legal issue" before the Court is the applicability of the Act. *Id.* The Debtor argues that the Act is inapplicable for the following two reasons: (1) the Act has not been applied to landlord-tenant matters where the violation involves excessive rents charged in violation of a rent control ordinance; and (2) the Plaintiffs cannot establish the elements of fraud under the Act.

On March 27, 1995, a hearing was conducted on these issues. At the hearing, the parties submitted a Stipulation As To Rental Overpayments that was dated March 21, 1995. The Stipulation provided, in pertinent part, that:

> ... the determination of the Hoboken Rent Leveling Administrator shall be adjusted to reflect the following overpayments:

---

2. Plaintiffs complaint provides in pertinent part:

> 9. The debt owed by defendant to each plaintiff was obtained by false pretenses, a false representation or actual fraud.
> WHEREFORE, plaintiffs demand judgment:
> a. declaring the debts owed to them to be nondischargeable pursuant to 11 U.S.C. § 523(a).
> b. for damages equal to the amount of the overpayment of rent.
> c. for treble damages and reasonable attorneys fees pursuant to the New Jersey Consumer Fraud Act. *N.J.S.A.* 56:8–1 *et seq.*
> d. for whatever other relief the Court deems equitable and just.
> *See* Complaint dated February 11, 1991, filed February 14, 1991, at ¶ 9.

| Plaintiff | Corrected Overcharge Determination |
|---|---|
| Nelfo C. Jimenez | $ 5,681.50 |
| Elvia Siguenzia | $ 3,319.00 |
| Hilda De La Cruz | $ 5,048.00 |
| Maria Morales | $ 5,310.00 |
| Hector Santiago | $ 5,975.00 |
| Santia Santos | $ 728.00 |
| Gloria Sandoval | $ 5,321.00 |
| Enilda Tirado | $ –0– |
| Total | $31,382.50 |

*See* Stipulation dated March 21, 1995, filed March 27, 1995, at ¶ 6.

Due to the Stipulation, the only remaining issue before the Court was the applicability of the Act and the Court reserved decision on the matter.

### Discussion

## I. The Act Can Be Applied To the Rental Of Residential Apartments

*N.J.S.A.* 56:8–2 reads in pertinent part:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice; . . .

*N.J.S.A.* 56:8–2. The statutory language of *N.J.S.A.* 56:8–2 encompasses the landlord-tenant relationship. *49 Prospect St. Tenants Ass'n. v. Sheva Gardens, Inc.,* 227 N.J.Super. 449, 461–69, 547 A.2d 1134 (App.Div.1988); *see also, 316 49 St. Assoc. Ltd., Partnership v. Galvez,* 269 N.J.Super. 481, 491–92, 635 A.2d 1013 (App.Div.1994), *cert. denied,* 137 N.J. 164, 644 A.2d 612 (1994).[3] Specifically, the *Sheva* court extended the definition of "sellers" and "consumers" to include landlords and tenants when the landlord is engaged in the "sale" or commercial enterprise of rental of real estate. *Id.* The *Sheva* court went on to explain that "[w]hile there may be some question as to the isolated rental of an apartment in a two-family house, such as the isolated sale of a single-family residence by its owners in *DiBernardo v. Mosley,* 206 N.J.Super. 371, 502 A.2d 1166 (App.Div.1986), *certif. denied,* 103 N.J. 503, 511 A.2d 673 (1986), defendants in this case as landlord of a 55–unit, four-story apartment building, as well as several other apartment buildings, are obviously engaged in a commercial enterprise with the tenants as consumers." *Id.* at 465, 547 A.2d 1134.

As explained by the *Sheva* court, the Act originally provided that a "sale" included "any sale, offer for sale, or attempt to sell". *Id.* at 463, 547 A.2d 1134. In 1967, the term "sale" was amended to apply to "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute." *Id.* at 464, 547 A.2d 1134. Notably, the 1967 amendment also broadened the scope of the Act by inserting the language "or with the subsequent performance of such person as aforesaid." *Id.* Thus, as pertains to the rental of real estate, condemned practices relate not only to the initial sale or advertisement, but also to the landlord's subsequent performance. *New Mea Const. Corp. v. Harper,* 203 N.J.Super. 486, 501, 497 A.2d 534 (App.Div.1985). The requisite standard mandates in part the maintenance of basic requirements of habitability. *Sheva,* 227 N.J.Super. at 468, 547 A.2d 1134.

Arguments asserting conflict between the Act and existing landlord-tenant statutes were considered inapt by the *Sheva* court. The *Sheva* court agreed that "there should not be duplicative recoveries for the same ascertainable loss, but conclude[d] that the existence of other statutory remedies for some of defendants' conduct does not bar applicability of the Consumer Fraud Act to this landlord-tenant relationship." *Id.* at 467, 547 A.2d 1134 (citations omitted). Moreover, the *Sheva* court distinguished cases wherein the treble damages were not

---

**3.** The Appellate Division in *Galvez* cited *Sheva* with approval in noting that the Act applied to landlord-tenant relationships and remanding the case for a determination on whether the Act was violated. 269 N.J.Super. at 491–92, 635 A.2d 1013.

imposed[4] by citing the absence of both a singular administrative agency regulating landlord-tenant practices as well as a designated forum for relief. *Id.* at 468–69, 547 A.2d 1134. Lastly, in response to concern that its decision would invite abuse by tenants, the *Sheva* court emphasized that the Act would apply only in cases where the landlord's extreme conduct is deemed to satisfy the condemned commercial practices standard set forth in *N.J.S.A.* 56:8–2. *Id.* at 469, 547 A.2d 1134.

▇ Therefore, under New Jersey case law, this Court finds, as argued by the Plaintiffs, that the Act can be applied to the type of landlord-tenant relationship present in the case at bar because Edward S. Cohen, the Debtor, was in the business of managing and operating real estate housing. *See* Opinion, at 172. The Debtor has argued that the Act is inapplicable to the type of landlord-tenant matter involved in the present case, namely, excessive rents charged in violation of a rent control statute. The Debtor contends that the *Sheva* ruling, which expressed that the Act was applicable to the landlord-tenant relationship, should be interpreted as limited to the circumstances of the *Sheva* case.

In *Sheva*, the court held that the Act applied where the conduct of the landlord, specifically the landlord's failure to comply with habitability standards, was sufficient to meet the condemned commercial practices set forth in *N.J.S.A.* 56:8–2. 227 N.J.Super. at 469, 547 A.2d 1134. The Debtor urges that *Sheva* should be interpreted as limiting the situations where the Act can be applied to landlords. However, the *Sheva* court does not indicate such a narrow application of the Act. The *Sheva* court states that the Act will apply to "extreme conduct of landlords sufficient to meet the condemned commercial practices set forth in *N.J.S.A.* 56:8–2." *Id.* Thus, the *Sheva* court did not limit the Act's

landlord-tenant application to habitability violations but instead simply focused on the language of *N.J.S.A.* 56:8–2.

A recent decision by the Appellate Division, in *316 49 St. Assocs. Ltd. Partnership v. Galvez,* 269 N.J.Super. 481, 635 A.2d 1013 (App.Div.1994), confirms the conclusion that *Sheva* was not meant to be interpreted as limiting the Act's application in the landlord-tenant context. In *Galvez,* the Appellate Division reaffirmed application of the Act to landlord-tenant relationships by remanding to the trial court the question of whether a landlord violated the Act where a tenant alleged that an option to purchase, which mandated supplemental monthly payments in excess of the rent control ordinance, constituted a violation of the Act. 269 N.J.Super. at 491–92, 635 A.2d 1013. Therefore, the decision by the Appellate Division in *Galvez* evidences that the application of the Act is not limited to issues of habitability, and as a result, the Debtor's argument is rejected.

In sum, the Court is convinced that, based on New Jersey law, the Plaintiffs situation may properly fall within the scope of the Act.

## II. Fraud Has Been Established Under the Act

▇ The legislative intent behind the Act was to provide victimized consumers with a remedy in commercial transactions. Specifically, the Act aims "to prevent deception, fraud, or falsity, whether by acts of commission or omission in connection with sale and advertisement of merchandise and real estate." *Fenwick v. Kay American Jeep, Inc.,* 72 N.J. 372, 376–377, 371 A.2d 13 (1977). In order to effectuate the protection of consumers, the Act is construed liberally. *State v. Hudson Furniture Co.,* 165 N.J.Super. 516, 520, 398 A.2d 900 (App.Div.1979). In concert with this legal interpretation, violation of the

---

4. In *Daaleman v. Elizabethtown Gas Co.,* 77 N.J. 267, 390 A.2d 566 (1978), a consumer brought suit under the Consumer Fraud Act on behalf of gas customers against a privately owned public utility company operating under the jurisdiction of the Board of Public Utility Commissioners of the State of New Jersey (PUC). The *Daaleman* court declined to impose treble damages under circumstances where the court determined that the subject matter of the plaintiff's Complaint

was within the exclusive jurisdiction of the PUC and not cognizable under the Consumer Fraud Act. The court found that the following factors existed: alternate remedies, concurrent state regulation, jurisdiction of another state agency, and that punitive damages would be counterproductive because it is the public users of the utility service on whom the punitive award would fall. 77 N.J. at 272–73, 390 A.2d 566.

Act does not necessitate a showing of actual deceit or fraudulent act; any unconscionable commercial practice is prohibited. *Skeer v. EMK Motors, Inc.*, 187 N.J.Super. 465, 470, 455 A.2d 508 (App.Div.1982). While the Act does not define the term "unconscionable commercial practice," the New Jersey Supreme Court has opined that "the standard of conduct contemplated by the unconscionability clause is good faith, honesty in fact and observance of fair dealing." *Kugler v. Romain*, 58 N.J. 522, 544, 279 A.2d 640 (1971).

■■■ As originally adopted, the Act was limited to prosecution by the Attorney General. *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 472, 541 A.2d 1063 (1988). In order to maintain an action the Attorney General is required to show proof of violation; however, it is not necessary for the Attorney General to show that the victimized consumer had "in fact been misled, deceived or damaged thereby...." *Id.* at 473, 541 A.2d 1063 (quoting *N.J.S.A.* 56:8–2). The 1971 amendment provided for a private right of action which enabled the successful plaintiff to recover, in addition to any other appropriate legal or equitable relief, treble damages, reasonable attorneys' fees, filing fees, and costs. *Id.* In contrast to actions instituted by the Attorney General, a private plaintiff must demonstrate an "ascertainable loss ... as a result of" the unlawful conduct in order to prevail. *Id.*

Recently, the New Jersey Supreme Court explained:

To violate the Act, a person must commit "an unlawful practice" as defined in the legislation. Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations. The first two are found in the language of *N.J.S.A.* 56:8–2, and the third is based on regulations enacted under *N.J.S.A.* 56:8–4.[5] A practice can be unlawful even if no person was in fact misled or deceived thereby. The capacity to mislead is the prime ingredient of all types of consumer fraud.

When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act. However, when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud.

*Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17–18, 647 A.2d 454 (1994) (internal citations omitted).

■■■ Affirmative acts include unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation. *N.J.S.A.* 56:8–2. Concealment, suppression, or omission of any material fact constitute acts of omission. *Id.* As noted by the *Cox* court, the principle distinction between the affirmative act and knowing omission categories is that while intent is not a requirement for substantiating affirmative acts of consumer fraud, acts of omission are restricted to incidents where the defendant manifests knowledge and intent. 138 N.J. at 17–18, 647 A.2d 454; *see also, Fenwick,* 72 N.J. at 377–378, 371 A.2d 13 (same).[6]

■■■ Therefore, as noted by the Plaintiffs, the following must be shown to establish an affirmative act or knowing omission violation:[7] (i) an affirmative act constituting an unconscionable commercial practice, deception, fraud, false pretense, false promise

---

**5.** *N.J.S.A.* 56:8–4 entitled "Additional Powers" provides in pertinent part:

To accomplish the objectives and to carry out the duties prescribed by this act, the Attorney General, in addition to other powers conferred upon him by this act, may ... promulgate such rules and regulations ... as may be necessary, which shall have the force of law. *N.J.S.A.* 56:8–4 (West 1960).

**6.** The Court notes that some courts have interpreted *N.J.S.A.* 56:8–2 as requiring any showing of fraud to be unconscionable, deliberate and knowing. *See Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F.Supp. 276, 286 (S.D.N.Y.1991) (citing *DeSimone v. Nationwide Mutual Ins. Co.*, 149 N.J.Super. 376, 380, 373 A.2d 1025 (App.Div. 1977)). The Court respectfully disagrees in light of the cases relied upon which interpret affirmative acts of consumer fraud as not requiring a showing of knowledge and intent.

**7.** The third category, regarding regulations enacted under 56:8–4, has not been raised by the parties.

or misrepresentation and ascertainable damages resulted; *or* (ii) a knowing omission of a material fact, with an intent that others rely on the deception and ascertainable damages resulted. *See* Plaintiff's Brief, at 5–6 (citing New Jersey Model Jury Charges, Civil § 4.23 (New Jersey Institute for Continuing Legal Education 1992)). Although Plaintiff does not articulate the burden of persuasion, the preponderance of the evidence is the standard for establishing a violation under the Act.[8] *Hyland v. Aquarian Age 2,000, Inc.*, 148 N.J.Super. 186, 191, 372 A.2d 370 (Ch. Div.1977); *see also, In re Fleet*, 95 B.R. 319, 331 (E.D.Pa.1989) (citing *Hyland* for rule that preponderance of evidence is standard under Act). In this Court's prior Opinion, it was explained that section 523(a)(2)(A) requires proof of actual fraud, which meant that Plaintiffs had to establish be a preponderance of the evidence that: (1) the Debtor obtained money, property or services through a material misrepresentation; (2) the Debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the Debtor made the misrepresentation with intent to deceive; and (4) the Plaintiffs reasonably relied on the representation; and (5) the Plaintiffs suffered loss, which was proximately caused by the Debtor's conduct. *See* Opinion, at p. 177 *citing Trump Plaza Associates v. Poskanzer (In re Poskanzer)*, 143 B.R. 991, 999 (Bankr. D.N.J.1992); *Southeast Bank v. Hunter (In re Hunter)*, 83 B.R. 803, 804 (M.D.Fla.1988); *Comerica Bank–Detroit v. Nahas (In re Nahas)*, 92 B.R. 726, 729–30 (Bankr.E.D.Mich. 1988); *see also Caspers v. Van Horne (Matter of Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987); *Citibank South Dakota v. Dougherty (In re Dougherty)*, 84 B.R. 653, 656 (9th

Cir. BAP 1988); *Hong Kong Deposit and Guaranty Co. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 51 (S.D.N.Y.1990); *Visotsky v. Woolley (In re Woolley)*, 145 B.R. 830, 833 (Bankr.E.D.Va.1991); *Citicorp Credit Services v. Hinman (In re Hinman)*, 120 B.R. 1018, 1021 (Bankr.D.N.D.1990); *Notre Dame Federal Credit Union (In re Tondreau)*, 117 B.R. 397, 400 (Bankr.N.D.Ind.1989); *Stamford Municipal Employees' Credit Union, Inc. v. Edwards (In re Edwards)*, 67 B.R. 1008, 1009–10 (Bankr.D.Conn.1986); *Chase Manhattan Bank v. Carpenter (In re Carpenter)*, 53 B.R. 724, 729 (Bankr.N.D.Ga. 1985). This Court ruled that the debt in question was nondischargeable under § 523(a)(2)(A) because the Court found, *inter alia*, that: (i) the Debtor made a misrepresentation regarding the legal amount of rent that could be charged for the subject apartments, *see id.*, at p. 177; (ii) the Plaintiffs reasonably relied on the representation that the amount of rent they were asked to pay was within the bounds of the law, *see id.*, at p. 177; and (iii) the Debtor's reckless disregard for the truth satisfied both the knowledge and intent to deceive elements of actual fraud, *see id.*, at pp. 178–79.

Although it seems clear that there has been a violation of the Act based on the Court's earlier ruling, the Debtor has argued that the elements of fraud can not be established under the Act. The Debtor contends that the Court's ruling that the Debtor acted with "reckless disregard" of the truth does not establish that the Debtor's conduct classified as "knowing" which is a required element where the wrongful conduct constitutes an act of omission rather than an affirmative act.[9]

---

8. The Court is aware that New Jersey courts traditionally have held that the burden of persuasion for common law fraud is clear and convincing evidence. *See, e.g., Stochastic Decisions, Inc. v. DiDomenico*, 236 N.J.Super. 388, 395, 565 A.2d 1133 (App.Div.1989), *certif. denied*, 121 N.J. 607, 583 A.2d 309 (1990); *R.A. Intile Realty Co., Inc. v. Raho*, 259 N.J.Super. 438, 475, 614 A.2d 167 (App.Div.1992). However, preponderance of the evidence appears to be the prevailing burden under the Act.

9. In its prior Opinion, this Court found:

The Court finds that the testimony presented at trial sufficiently demonstrates that Cohen *should* have been aware of the rent control ordinance. Cohen may not have had training in the management of rental property, but several incidents in his management experience should have alerted him to the fact that his building was subject to rent control.

Cohen testified that, at the time the new tenants moved into his building, he was not aware of any ordinance restricting the amount of rent he could charge a tenant moving in after he purchased the property. He did

The Debtor's argument is not persuasive because the Debtor's conduct need not be analyzed under omission standards.[10] *See Cox,* 138 N.J. at 17–18, 647 A.2d 454; *Fenwick,* 72 N.J. at 377–378, 371 A.2d 13; *Chattin v. Cape May Greene, Inc.,* 243 N.J.Super. 590, 603, 581 A.2d 91 (App.Div.1990), *aff'd,* 124 N.J. 520, 591 A.2d 943 (1991). As explained by the *Cox* court,

> ... the Act specifies the conduct that will amount to an unlawful practice in the disjunctive, as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, *or* the knowing[ ] concealment, suppression, *or* omission of any material fact * * *."
> *N.J.S.A.* 56:8–2 (emphasis added). Proof of any one of those acts or omissions or a violation of a regulation will be sufficient to establish unlawful conduct under the Act.

138 N.J. at 19, 647 A.2d 454; *see also, D'Ercole Sales Inc. v. Fruehauf Corp.,* 206 N.J.Super. 11, 22, 501 A.2d 990 (App.Div. 1985).

In defining the unconscionability clause, the New Jersey Supreme Court has stated:

> The standard of conduct contemplated by the unconscionability clause is good faith, honesty in fact and observance of fair deal-

know, however, that he could not raise the rent of existing tenants by more than six percent. Initially alerted to certain rent restrictions, Cohen could have inquired about any further restrictions from such sources as the attorney representing him in the purchase of the Monroe property or even the Hoboken Board itself.

In fact, as early as 1986, Cohen had demonstrated his ability to ascertain information regarding what he could charge his tenants. He had learned, through his own investigating, that he could surcharge tenants for certain costs, such as water and taxes. Thus, he was clearly aware of the existence of the Hoboken Rent Leveling and Stabilization Board before any of the new tenants moved into the building. He should also have been alerted to the fact that this Board might have authorization over the rents he could charge.

Furthermore, Cohen operated other rental units besides the Monroe Property. Prior to 1987, Cohen had managed up to 32 units, including the Monroe property. Trans. p. 64–65. Later, in November 1987, Cohen purchased property in Union City, which added eight units to his rental properties. Trans. p. 65. The testimony, at trial, adequately demonstrates that, during the period that Cohen rented the apartments to the new tenants, he owned other rental units besides the Monroe Property and thus, he was familiar with the responsibilities and obligations accompanying the management of rental property.

Thus, Cohen's failure to investigate whether, and to what extent, a rent control ordinance governed the Monroe Property was not merely a careless or negligent oversight on the part of an inexperienced or naive landlord. Instead, Cohen's failure to inquire into the rent control issue and simultaneously charge new tenants what he believed to be fair market value demonstrates a reckless disregard for the truth. Cohen exhibited his ability to obtain information from the Hoboken Board where the result benefitted him and permitted him to pass on his costs. Avoiding any investigation into potential rent control, where the result could be financially detrimental to Cohen, amounts to a reckless disregard for the truth (which was that a rent control ordinance existed).

The Court's finds that Cohen's reckless disregard for the truth as demonstrated by his failure to inquire about rent control satisfies both the knowledge element and the intent to deceive element required under § 523(a)(2)(A). *See* Opinion at pp. 178–79.

10. The Court notes that an act of omission violation under the Act requires a showing of knowledge and intent to deceive. In the Opinion, this Court made a finding that the Debtor acted with a reckless disregard for the truth that satisfied both the knowledge and intent to deceive elements of actual fraud under § 523(a)(2)(A). The Court has not found a New Jersey case that has ruled that a reckless disregard for the truth can satisfy the Act's omission requirements of knowledge and intent to deceive. *But see Ocean Cape Hotel Corp. v. Masefield Corp.,* 63 N.J.Super. 369, 381, 164 A.2d 607 (App.Div.1960) (stating "[m]isrepresentation of a present state of mind, with respect to a future matter, may be concluded from the utter recklessness and implausibility of the statement in light of subsequent acts and events") (citation omitted). The lack of New Jersey case law on the issue of whether a finding of a reckless disregard for the truth is sufficient for an action requiring knowledge and intent to deceive is probably due to New Jersey's recognition of a cause of action for negligent misrepresentation, *see Karu v. Feldman,* 119 N.J. 135, 146, 574 A.2d 420 (1990), which does not require knowledge or an intent to deceive. As a result, it is somewhat unclear whether a showing of reckless disregard for the truth would satisfy the knowing and intent requirements of the Act's omission standard. This Court does suggest that it is likely that a New Jersey court would decide that a reckless disregard for the truth satisfies the knowing and intent requirements of an act of omission due to the underlying policies and objectives of the Act. However, because the Court finds that the affirmative act requirements of the Act can be established, the Court will not analyze the act of omission requirements any further.

188

ing. The need for application of the standard is most acute when the professional seller is seeking the trade of those most subject to exploitation—the uneducated, the inexperienced and the people of low incomes. In such a context, a material departure from the standard puts a badge of fraud on the transaction and here the concept of fraud and unconscionability are interchangeable.

*Kugler v. Romain*, 58 N.J. 522, 544, 279 A.2d 640 (1971); *see also, Hundred East Credit Corp. v. Eric Schuster*, 212 N.J.Super. 350, 355, 515 A.2d 246 (App.Div.1986) (stating "the strongest case for relief [under the Act] is presented by 'the poor, the naive and the uneducated.'") (quoting portions of *Kugler*) *certif. denied*, 107 N.J. 61, 526 A.2d 146 (1986).

Turning to the case at bar, based on the Court's earlier findings as to § 523(a)(2)(A), fraud has been established by a preponderance of the evidence. The Court notes that none of the Plaintiffs were born in the continental United States or spoke English as their native language or graduated college. *See* Opinion, at pp. 4–7. Thus, the instant case presents the type of situation which the New Jersey Supreme Court has expressed that "the concept of fraud and unconscionability are interchangeable." *See Kugler*, 58 N.J. at 544, 279 A.2d 640. As a result, pursuant to the language of *N.J.S.A.* 56:8–2, the Plaintiffs need not show that the Debtor's conduct was knowing to establish an "unlawful practice" under the Act since it is clear that an affirmative act violation has been shown, i.e., unconscionable commercial practice and/or fraud.

This ruling is consistent with the goal of the Act, which is to prevent sellers from engaging in deceptive sales and advertising practices in relation to the marketing of real estate and goods. *See Meshinsky*, 110 N.J. at 472, 541 A.2d 1063; *Fenwick*, 72 N.J. at 378, 371 A.2d 13. Moreover, the Act is remedial and must be "liberally construed in favor of protecting consumers." *In re Fleet*, 95 B.R. 319, 331 (E.D.Pa.1989) (citing *Barry v. Arrow Pontiac, Inc.*, 100 N.J. 57, 494 A.2d 804 (1985)). These policy and equitable considerations further indicate that a finding of a violation of the Act is justified.

### III. Plaintiffs Should Be Allowed To Benefit From the Act's Damage Provisions

Section 56:8–19 provides the remedy for a private party under the Act. The Court notes "that an award of treble damages and attorneys' fees is mandatory under *N.J.S.A.* if a consumer-fraud plaintiff proves both an unlawful practice under the Act and an ascertainable loss." *Cox*, 138 N.J. at 24, 647 A.2d 454. Section 56:8–19 states:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or practice declared as unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, *in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section the court shall award reasonable attorneys' fees, filing fees and reasonable costs of suit.*

*N.J.S.A.* 56:8–19 (emphasis added). Before calculating the Plaintiffs damages under this provision, this Court must address whether punitive damages for fraud, such as the Act's treble damages provision, can be excepted from discharge by section 523(a)(2)(A). The parties did not raise the question but upon this Court's independent research it was revealed that there is a difference of opinion among courts on this issue. Thus, this Court will discuss the issue briefly.

Based on this Court's research, neither the Third Circuit Court of Appeals, nor lower courts within the circuit, have taken a position on punitive damage awards under section 523(a)(2)(A). Two circuit courts that have considered the issue did not reach similar conclusions. In *In re Levy*, 951 F.2d 196, 198–99 (9th Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992), the Ninth Circuit ruled that punitive damages were dischargeable where the grounds of dischargeability were based on findings of

fraud under section 523(a)(2)(A). The basis for the *Levy* court's interpretation was that the exception to discharge under section 523(a)(2)(A) was available only "to the extent obtained by" fraud and not to debts imposed for purposes of punishment. *Id.* (citing § 523(a)(2)(A)). The *Levy* court stated that "the language of the statute suggests that the subsection limits nondischargeability to the amount of benefit to the debtor or loss to the creditor the act of fraud itself created." *Id.*

The Eleventh Circuit reached a different conclusion in *St. Laurent v. Ambrose,* 991 F.2d 672 (11th Cir.1993). The *St. Laurent* court began its analysis by noting that most courts have found punitive damages dischargeable under § 523(a)(2)(A);[11] however, other courts have disagreed and held that punitive damages for fraud are excepted from discharge by § 523(a)(2)(A).[12] 991 F.2d at 677–78. In finding the § 523(a)(2)(A) exception to discharge equally appropriate to punitive damages, the *St. Laurent* court noted the absence of demonstrated intent by Congress to alter, by the 1984 amendment to § 523(a)(2)(A), the practice of excluding puni-

tive debts from discharge where the compensatory damages resulting from the same conduct were nondischargeable. *Id.* at 679.[13] Furthermore, the *St. Laurent* court focused on the "expansive definition of 'debt' " and concluded that "the term 'debt' encompasses an award for punitive damages arising from the same conduct as necessitated an award of compensatory damages...." *Id.* at 680.[14]

The Court agrees with the position espoused by the *St. Laurent* court. In keeping with the broad definition of "debt" under the Bankruptcy Code, all debts arising from the § 523(a)(2)(A) violation should be deemed nondischargeable. As a result, the "debt" that will be deemed nondischargeable under section 523(a)(2)(A) shall include the treble damages as specified by the Act.

In sum, the Plaintiffs have established a violation of the Act and are entitled to three times the amount of overpayment, along with reasonable attorneys fees and costs of suit.[15] *See Cox,* 138 N.J. at 24, 647 A.2d 454.

### Conclusion

The Court finds that a violation of the Consumer Fraud Act has been established.

---

**11.** Citing *In re Ellswanger,* 105 B.R. 551, 556 (9th Cir. BAP 1989); *In re Day,* 137 B.R. 335, 341–42 (Bankr.W.D.Mo.1992); *In re Church,* 69 B.R. 425, 434–35 (Bankr.N.D.Tex.1987); *In re Larson,* 79 B.R. 462, 465 (Bankr.W.D.Mo.1987); *In re Suter,* 59 B.R. 944, 947 (Bankr.N.D.Ill. 1986); *In re Cheatham,* 44 B.R. 4, 8–9 (Bankr. N.D.Ala.1984).

**12.** Citing *In re Manley,* 135 B.R. 137, 144–45 (Bankr.N.D.Okla.1992); *In re Tobman,* 96 B.R. 429 (Bankr.S.D.N.Y.1989), *rev'd on other grounds,* 107 B.R. 20 (S.D.N.Y.1989); *In re Daniels,* 94 B.R. 205, 206 (Bankr.S.D.Fla.1988); *In re Guy,* 101 B.R. 961 (Bankr.N.D.Ind.1988); *In re Carpenter,* 17 B.R. 563, 564 (Bankr.E.D.Tenn. 1982).

**13.** The *St. Laurent* court stated:

As enacted in 1978, § 523(a)(2)(A) excepted any debt "for obtaining money, property [or] services ... by ... actual fraud...." In 1984, however, Congress amended § 523(a)(2)(A) to except from discharge "any debt for money, property [or] services ... *to the extent obtained by* ... actual fraud...." *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 1984 U.S.C.C.A.N. (98 Stat.) 333, 376 (emphasis added).

991 F.2d at 679.

**14.** The *St. Laurent* court stated:

The Bankruptcy Code defines "debt" as "liability on a claim.", 11 U.S.C. § 101(12). The terms "debt" and "claim" are coextensive. *Johnson v. Home State Bank,* 501 U.S. 78, 85 n. 5, 111 S.Ct. 2150, 2154 n. 5, 115 L.Ed.2d 66 (1991). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). A "right to payment" is "nothing more nor less than an enforceable obligation, regardless of the objectives ... to [be] serve[d] in imposing the obligation." *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990).

991 F.2d at 678 (footnotes omitted).

**15.** Here the Court is satisfied that the Plaintiffs had been attempting to establish a violation of the Act from the commencement of the dischargeability proceedings. This is important because attorneys fees under the Act are only granted when it is determined that the plaintiff is asserting a violation under the Act. *See Hundred East,* 212 N.J.Super. at 361–62, 515 A.2d 246 (remanded case to determine whether consumer was entitled to attorneys fees under the Act where cause of action under the Act was not asserted until the eighth day of initial trial).

As a result, the Plaintiffs are entitled to a nondischargeable judgment equal to three times the stipulated amount of overpayment, along with reasonable attorneys fees and costs. The stipulated amount of the overcharges totaled $31,382.50. Accordingly, judgment shall enter reflecting treble damages in the total amount of $94,147.50, as apportioned to each plaintiff based on the stipulated amounts of rental overpayments, plus reasonable attorneys' fees and costs to be fixed by the Court. Counsel for the Plaintiffs shall submit a detailed affidavit of services rendered and costs incurred which shall be served on the attorney for the Debtor–Defendant.