In re Edward S. COHEN, Debtor.

Hilda DE LA CRUZ, Nelfo C. Jiminez, Maria Morales, Gloria Sandoval, Hector Santiago, Santia Santos, Elba Saravia, Elvia Siguenzia, Enilda Tirado, Plaintiffs–Appellees,

v.

Edward S. COHEN, Defendant–Appellant.

Civ. No. 95–4958 (WHW).

United States District Court,
D. New Jersey.

Feb. 7, 1996.

600

Gregory G. Diebold, Hudson County Legal Services Corp., Timothy K. Madden, Di-

rector, Jersey City, New Jersey, for Plaintiffs–Appellees.

Robert Zeller, Rem, Zeller and Associates, P.C., Hackensack, New Jersey, for Debtor–Defendant–Appellant.

### OPINION

WALLS, District Judge.

Debtor Edward S. Cohen brings this appeal from a final judgement of the bankruptcy court in which plaintiffs were awarded punitive and compensatory damages of $94,147.50.

### BASIS OF APPELLATE JURISDICTION

28 U.S.C. § 157 confers upon bankruptcy courts the power to hear and determine all court proceedings arising under Title 11, arising in or related to a case under Title 11, and all core proceedings under Title 11. 28 U.S.C. § 158(a) confers jurisdiction on district courts to hear appeals from final judgments of bankruptcy courts in cases and proceedings under 28 U.S.C. § 157.

This appeal arises from a final judgment of the Honorable Rosemary Gambardella, United States Bankruptcy Judge for the District of New Jersey, in which she awarded compensatory and punitive damages against the debtor after determining the debt to be "nondischargeable" under 11 U.S.C. § 523(a)(2)(A). Accordingly, this Court has jurisdiction.

### UNCONTESTED FINDINGS OF FACT BY THE BANKRUPTCY COURT

The debtor and his father, Nathan Cohen, owned, managed and operated real estate housing from October 1984 until the end of 1990. Their first purchase was a multiple dwelling building at 502 Jefferson Street, Hoboken, New Jersey. See Transcript of November 12, 1993 trial (Trans.) at 47. In August 1985 they purchased another multiple dwelling property at 600 Monroe Street in Hoboken. Trans. at 44. And thereafter, they purchased more real estate: 711 Palisades Avenue, Union City; 34–40 Plum Street, Paterson; 210 South Street, Jersey City, 14 Beech Street, Paterson. Trans. 48–50, 64.

Because he could no longer cover the expenses of his properties, on November 21, 1990, the Debtor filed a chapter 7 petition with the United States Bankruptcy Court in the District of New Jersey. Trans. at 50.

In the period before he filed for bankruptcy the debtor operated the Monroe property and rented the 18 apartments within. Sandy, his superintendent, managed the property and was responsible for renting the apartments. Trans. at 18. This property, for the duration of the debtor's ownership, was regulated by a Hoboken Rent Control ordinance which limited the amount of, and increase in, rent that could be charged. See Hoboken Code § 155 et seq. The debtor was notified by the Rent Leveling and Stabilization Board (the "Board") in September of 1989 that he was charging some of his tenants rents in excess of that allowed by the ordinance. Trans. at 56–57. Those tenants who were overcharged and identified by the Board to the debtor are the plaintiffs: Hilda De La Cruz, Nelfo C. Jimenez, Maria Morales, Gloria Sandoval, Hector Santiago, Santia Santos, Elba Saravia, Elvia Siguenzia, and Enilda Tirado.

All of the plaintiffs were born in South America, spoke Spanish as their primary, if not only, language, and, except for Ms. Tirado, who completed high school, none had received an education beyond grade level six. Trans. at 19–30. The parties stipulated the amount of overpayment charged to each plaintiff—the total amount was $31,382.50.[1]

The debtor was aware of the existence of the rent control ordinance at the time he purchased the property. Based on discussions had with other landlords, he believed that he was permitted to charge the fair market value for each apartment but could only increase the rent of existing tenants by six percent. Trans. at 51–52. He was not aware that the rent control ordinance set limits on the amount of rent that could be

---

1. The individual amounts of overpayment are: Nelfo C. Jiminez—$5,681.50; Elvia Siguenzia $3,319.00; Hilda De La Cruz—$5,048.00; Maria Morales—$5,310.00; Hector Santiago—$5,975.00; Santia Santos—$728.00; Gloria Sandoval—$5,321.00; Enilda Tirado—$0.00.

charged for a vacant apartment. Trans. at 53. He had had no formal or informal discussions or inquiries with the local Rent Leveling Board concerning the effect of the rent control ordinance on the rent he could charge. Trans. at 53. Furthermore, even though he was represented by an attorney at the time he purchased the subject property, he never consulted with that, or any other attorney about the rent control ordinance. Trans. at 53–54, 72–73. He also never read, nor obtained a copy of the ordinance. Trans. at 72–73. At trial the parties stipulated that the debtor had made no claims to the plaintiffs that the rents he had set conformed to the rent leveling ordinance, and that, at the time the apartments were rented, there were no discussions about rent control between the plaintiffs and him. Trans. at 7.

While he had never sought to learn from the Rent Control Board the amount of rent he could set, the debtor did inquire about surcharging his tenants for the increases in taxes and water charges imposed by the City of Hoboken in 1986 and again in 1988. Trans. at 70. He was informed that he could surcharge for these amounts, and did so. Trans. at 70–72.

After he received notice of the Board's decision that he had overcharged the plaintiffs, he failed to perfect his appeal. Trans. at 79. Yet he did not reimburse any of the plaintiffs. *Id.*

### PROCEDURAL HISTORY

Plaintiff tenants filed an adversary proceeding against the debtor on February 11, 1991. The complaint sought a declaration that debts owed by the debtor to the plaintiffs were non-dischargeable under 11 U.S.C. § 523(a), damages equal to the amount of overpayment of rent, treble damages, and reasonable attorneys fees pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 et seq.

On November 12, 1993, the bankruptcy court conducted a trial of the issue of whether the debt was dischargeable under 11 U.S.C. § 523(a). On October 24, 1994, the court by opinion declared the debt non-dischargeable. *In re Cohen,* 185 B.R. 171, 172 (Bankr.D.N.J.1994) (the "First Opinion"). Thereafter the court received briefs from the parties and conducted a damages hearing. The amount of rent overcharge was not disputed—rather the parties disagreed over the applicability of the New Jersey Consumer Fraud Act (the "Act") providing for the imposition of treble damages. In an opinion of June 19, 1995, the court held that the Act applied, that the debtor had violated it and that he was therefore liable for punitive and compensatory damages. *In re Cohen,* 185 B.R. 180, 183 (Bankr.D.N.J.1995) (the "Second Opinion").

The debtor now brings this appeal to this Court, and seeks reversal on the following grounds: 1) that the debt in question is dischargeable; 2) that the New Jersey Consumer Fraud Act does not apply to the dispute; 3) that fraud had not been established under the Act; and 4) that the punitive damages imposed are not excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

### STANDARD OF REVIEW

Bankruptcy Rule 8013 provides that a bankruptcy judge's findings of fact "shall not be set aside unless clearly erroneous." Conclusions of law, however, are subject to de novo review. *See Universal Minerals, Inc. v. C.A. Hughes and Co.,* 669 F.2d 98, 102 (3d Cir.1981).

It is not always clear, though, whether a matter of dispute is factual or legal. The Third Circuit, in *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981), has defined the criteria courts should use to determine whether to apply the clearly erroneous or the de novo standard of review.[2] It noted that the beginning place of

---

2. In *Universal Minerals* the Court's discussion of the different kinds of facts and the applicable standard of review was general and thus has relevance in many different contexts. The *Universal Minerals* conclusions are particularly appropriate here, though, for both cases concern appeals from bankruptcy courts. Debtor argues,

however, that *Universal Minerals* is not relevant to the present case because it established a standard of review for the court of appeals rather than for the district courts. This claim is spurious. The court wrote in *Universal Minerals,* "[w]e are in as good a position as the district court to review the findings of the bankruptcy

inquiry involves the status to be accorded each determination by the trial court, and whether that determination involves basic facts, inferred facts or ultimate facts. *Id.* at 102. Basic facts are the "historical and narrative events elicited from the evidence presented at trial, admitted by stipulation, or not denied, where required, in responsive pleadings." *Id.* Inferred facts are "drawn" from the basic facts and may be found "only when, and to the extent that, logic and human experience indicate a probability that certain consequences can and do follow from the basic facts." *Id.* Both basic and inferred factual determinations involve no legal conclusions and thus should be disturbed only when clearly erroneous. *Id.*

■ An ultimate fact, however, "is usually expressed in the language of a standard enunciated by case-law rule or by statute, e.g., an actor's conduct was negligent; the injury occurred in the course of employment; the rate is reasonable; the company has refused to bargain collectively. The ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact.'" *Id.* (quoting R. Aldisert, The Judicial Process 694 (1976)).

■ Consequently, this Court shall apply the appropriate standard of review to each finding of the Bankruptcy Court based upon whether it involves a basic, inferred or ultimate fact.

### DISCUSSION

#### I. The Dischargeability of the Debt

■ 11 U.S.C. Section 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a state-

ment representing the debtor's or other insider's financial condition ...[3]

In order to prevail under this section the creditor must show: "(1) the debtor obtained money, property or services through a material misrepresentation; (2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth; (3) the debtor intended to deceive the creditor; (4) the creditor reasonably relied on the debtor's false representations; and (5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations." *In re Poskanzer,* 143 B.R. 991, 999 (Bankr.D.N.J.1992). In the proceedings below Bankruptcy Judge Gambardella found that plaintiffs had established all of the above elements thereby rendering the debt non-dischargeable.

■ Debtor argues that the bankruptcy court erred because the first three elements were not proved. Specifically, he made no material misrepresentation—indeed he made no affirmative representation at all—and thus there could be no accompanying finding of intent or reckless indifference to the falsity of that representation. Not surprisingly, plaintiffs counter that all elements were established. They argue further that the bankruptcy court's determination that the debtor made a misrepresentation and that he acted with reckless indifference to the truth of that representation are findings of fact that must be upheld unless clearly erroneous. Debtor argues that they constitute legal conclusions and this Court's review must be plenary. The Court finds that these are classic "ultimate fact" determinations which, under *Universal Minerals,* 669 F.2d at 102, require de novo review.

■ The Debtor's position is that because he made no affirmative representation to the plaintiffs, he can not be deemed to have made a misrepresentation. Plaintiffs contend, and the Court below found, that when the debtor set the rents for the plaintiffs he impliedly represented that those amounts

court, so we review the bankruptcy court's finding by the standards the district court should employ ..." 669 F.2d at 102.

3. A plaintiff-creditor seeking the benefit this provision must prove its elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

were lawful. Because they were greater than that permitted under the rent control ordinance, the debtor committed a misrepresentation. The Court finds plaintiffs' argument persuasive. Debtor made an implicit representation regarding the rent he charged—his silence coupled with the rental amount fixed constituted a representation that he was charging lawful rent.

Debtor also asserts that because he was unaware that that representation was false he could not have made a misrepresentation. However, there is no knowledge requirement within the first element of § 523(a)(2)(A)—that he may not have understood that he had made a misrepresentation is simply not germane. He materially misrepresented the amount he could and did charge plaintiffs.

The second and third elements that must be satisfied to render a debt non-dischargeable because of fraud are knowledge of the falsity of the representation and an intent to deceive on the part of the debtor, respectively. *In re Poskanzer*, 143 B.R. at 999. Bankruptcy courts have generally followed the principle that actual knowledge as well as intent to deceive may be established by a showing that the debtor recklessly disregarded the truth. *See, e.g., In re Woolley*, 145 B.R. 830, 834 (Bankr.E.D.Va.1991). Recently, in *In re Cohn*, 54 F.3d 1108, 1118–19 (3d Cir.1995), the Third Circuit discussed what a plaintiff must evidence to prove both knowledge and intent to deceive by a debtor under § 523(a)(2)(B), which provides that debts incurred based on a false written statement are non-dischargeable. The Court "acknowledge[d] that because a debtor will rarely, if ever, admit that deception was his purpose, [this element] is extremely difficult for a creditor to prove by direct evidence." *Id.* at 1118. It determined, in accord with several other circuits, "that the intent to deceive can be inferred from the totality of the circumstances, including the debtor's reckless disregard for the truth." *Id.* at 1118–19. While *In re Cohn* addressed § 523(a)(2)(B) rather that § 523(a)(2)(A), the Court's rationale of how scienter and intent may be proved under the former is fully applicable to the latter. Not only are the contexts closely related, but the difficulty of proving subjective intent of a debtor is the same. On the basis of *In re Cohn* as well as the decisions of bankruptcy courts, *see, e.g., Woolley*, 145 B.R. at 834, this Court concludes that proof of reckless indifference to the truth will satisfy both the knowledge and intent to deceive prongs of § 523(a)(2)(A).

Plaintiffs may prevail, therefore, if they have demonstrated by a preponderance of the evidence that debtor was recklessly indifferent to his representation. "Reckless conduct refers to unreasonable conduct in disregard of a known or obvious risk from which it is highly probably that harm would follow." *In re Woolley*, 145 B.R. at 834 (quoting Prosser & Keeton On Torts, 213 (5th ed. 1984)). "It is usually accompanied by a conscious indifference to the consequences. In contrast, negligence is characterized as mere thoughtlessness or inadvertence or simple inattention." *Id.* Hence, "[w]here the knowledge element is based on recklessness, the conduct must exceed negligence and rise to the level of reckless disregard for truth.... Recklessness is usually determined by a pattern of conduct." *Id.* (citations omitted). Lastly, as the Eighth Circuit has held, if the totality of the circumstances exhibit a debtor's reckless disregard of the truth, a finding of intent or knowledge cannot be overcome simply by an "unsupported assertion of honest intent." *In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987).

Debtor argues that there was no pattern of conduct evincing recklessness on his part, and that at worse he was negligent. In support of that position, he seeks to distinguish *In re Woolley*, 145 B.R. at 834, where a bankruptcy court in the Eastern District of Virginia found that a debt was non-dischargeable because of the debtor's fraudulent representation under § 523(a)(2)(A). There the debtor induced the plaintiff to invest in an oil well by stating on many different occasions that the well produced 900 barrels per day, when the well actually produced much less. *Id.* The debtor had believed that the representations he made were accurate. Nevertheless, the

court concluded that he had acted with reckless indifference to the truth because

> he had no way of knowing whether the statement [concerning profitability] was reasonably accurate ... he knew nothing about the oil and gas industry. He made no investigation of data on which to make his profit/risk statements about [one of the wells]. For over one year he never inquired about any production data on either [of the wells] ... [he] must have known that his continuing representations, on which [plaintiff] relied to his detriment, had no reasonable factual basis.

*Id.* at 835. The court was also persuaded that the debtor's conduct was reckless because he had consistently and repeatedly represented to the plaintiff that the wells were profitable. *Id.* Moreover, the Court considered the debtor's conduct "in light of his prior business experience;" he had an advanced business degree, had been a member of the business faculty of a local university and had previously been employed as a financial manager at two large Virginia corporations. *Id.* Based on these considerations, the court concluded that his behavior constituted more than mere negligence, and instead rose to the level of reckless disregard for the truth. *Id.*

The Court acknowledges that this case does not squarely fit within *Woolley*. Unlike the debtor in that case, Cohen had had little prior experience as a landlord and no formal training or education pertaining to the ownership and management of real estate when he purchased the property at issue. Furthermore, the *Woolley* debtor had repeatedly made affirmative misrepresentations. In contrast, Cohen's misrepresentation occurred once, when he set the rent at a price above the legal limit; arguably he committed a misrepresentation every time he deposited the plaintiffs' rent checks. In any event, this scenario is clearly different from that in *Woolley*.

Nevertheless, this Court concludes that Cohen engaged in a pattern of conduct which exhibited recklessness. At the time the debtor made his first real estate housing purchase in October, 1984, he was inexperienced in owning and managing property. It is also true that the Monroe property, in which all the plaintiffs did or still do reside was only his second purchase. However, by January, 1987 Cohen owned and operated or was currently owning and operating somewhere between 32 and 40 rental units. Trans. at 49–68. 7 out of the 9 plaintiffs in this case moved into their apartments in January 1987. Trans. at 17–35. By the time he was setting the rent for most of the plaintiffs, he had had two years of real estate experience.

Significantly, Cohen admitted that when he fixed the rents for the plaintiffs he knew that a rent control ordinance existed which governed the amount a landlord could charge a tenant. Trans. at 69. Yet he never contacted the rent control board to determine how that ordinance applied to his activity. Trans. at 52. He never spoke with an attorney even though he had been represented by counsel when he purchased the Monroe Property. Nor did he ever obtain a copy of or read the ordinance. Trans. at 72. Based on conversations he had with other landlords, he believed that he could charge new tenants whatever he wanted but could only raise the rent of existing tenants six percent annually. Trans. at 52. Yet he never, in any of the conversations he had with other landlords, asked or discussed what amount under the ordinance he could charge new tenants. Trans. at 71. When it redounded to his benefit, Cohen found time to obtain the correct legal information: upon the increase of real property taxes and water charges by the municipality, he successfully requested and obtained permission from the rent control board to surcharge his tenants to reflect those increases. Trans. at 70. He did this not once but twice—in 1986 and again in 1988. *Id.*

Thus the debtor was not incapable of determining how the rent control ordinance affected the rents he could establish. Yet, when it was to his disadvantage, he remained "ignorant." Through his repeated discussions with other landlords or the opportunities he had to consult with an attorney or during his various dealings with the rent control board or perhaps by obtaining a copy of the ordinance which he knew governed his

Hoboken property, he could, and moreover should, have learned that the ordinance limited his ability to set the rents of new tenants. This Court concludes that his conduct amounted to a reckless indifference to the truth sufficient to satisfy both the knowledge and intent elements of § 523(a)(2)(A). Because Cohen acquired the debt he owes the plaintiffs through a false representation, that debt is non-dischargeable.

## II. The Applicability of the New Jersey Consumer Fraud Act

■ The Consumer Fraud Act, N.J.S.A. 56:8–2, provides a cause of action to individuals who have been the victim of fraud "in connection with the sale or advertisement of any merchandise or real estate ..." Bankruptcy Judge Gambardella held that plaintiffs stated a valid cause of action under this Act, and that the debtor had violated the Act. Debtor argues that as a matter of law the Act is inapplicable, and that he did not violate it. Plaintiffs argue to the contrary. The following will address the Act's applicability while the next section will consider the bankruptcy court's determination that the debtor violated the Act.

■ In *49 Prospect Street Tenants Association v. Sheva Gardens*, 227 N.J.Super. 449, 465, 547 A.2d 1134 (1988), the New Jersey Appellate Division held that "[t]he plain language of the [Consumer Fraud Act] in its present form requires a conclusion that it applies to landlords as 'sellers' and tenants as 'consumers' since it applies to the rental of real estate." *See also 316 49 St. Associates Limited Partnership v. Galvez*, 269 N.J.Super. 481, 491, 635 A.2d 1013 (App.Div.1994) ("The Consumer Fraud Act has been held applicable to the landlord-tenant relationship"). Moreover, the statute applies to the inducement of the landlord-tenant relationship as well as any conduct after that relationship has been contractually established. *Id.* at 466, 547 A.2d 1134.

The debtor argues that though the statute was held to apply to landlord-tenant disputes in both *Sheva Gardens* and *Galvez,* it does not apply to this dispute because the facts of this case are different from the facts of those cases. This argument borders on the frivo-

lous. The Court finds nothing in either of these opinions which states or implies that the Act's applicability to the rental of residential real estate is confined to the facts of these cases. Indeed, as the Bankruptcy Judge correctly noted, *Sheva Gardens* states that the Act will apply to "extreme conduct of landlords sufficient to meet the condemned commercial practices set forth in N.J.S.A. 56:8–2." [227 N.J.Super. at 469, 547 A.2d 1134.] Thus, the Sheva court did not limit the Act's landlord-tenant application to habitability violations but instead simply focused on the language of [the Act]. *In re Cohen,* 185 B.R. at 184. The argument that the Act does not apply is without merit.

## III. Violation of the New Jersey Consumer Fraud Act

■ Under the Consumer Fraud Act, N.J.S.A. 56:8–2, defendants are liable for treble damages for engaging in "unlawful practices," which are defined as

[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation or the knowing concealment or suppression or omission of any material facts with intent that others will rely upon such concealment, suppression or omission ... or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby ...

In *Cox v. Sears Roebuck & Co.,* the New Jersey Supreme Court addressed what plaintiffs must demonstrate to establish liability under the Act. 138 N.J. 2, 647 A.2d 454 (1994). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Id.* at 17, 647 A.2d 454. "When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element ... However, when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Id.* (citations omitted). Included within the category of "affirmative acts" are "any unconscionable commercial

practice, deception, fraud, false pretense, false promise, [or] misrepresentation." N.J.S.A. 56:8–2.

The Bankruptcy Court found that the debtor had engaged in an affirmative act— either an unconscionable commercial practice or fraud—and therefore had violated the statute. The debtor renews arguments advanced below that he is not liable under the Act because he did not possess the intent to defraud, and that "reckless disregard" does not satisfy the intent requirement. The plaintiffs argue that the bankruptcy court's decision should be upheld because the debtor committed an affirmative act or a knowing omission under the Act, either of which subjects him to liability.

As previously stated, certain of the acts listed in the Consumer Fraud Act, such as "fraud," are deemed "affirmative acts" and do not require proof of intent. *Cox*, 138 N.J. at 17–18, 647 A.2d 454. Thus "fraud" under the Consumer Fraud Act must necessarily be subsumed within "false pretenses, a false representation, or actual fraud" found in 11 U.S.C. § 523(a)(2)(A) because the latter terms do require proof of intent. This Court has already decided that the debt owed to plaintiffs is non-dischargeable because it was acquired through "false pretenses, a false representation or actual fraud." Consequently, the debtor has also violated the Consumer Fraud Act.

That this Court's determination under 11 U.S.C. § 523(a)(2)(A) necessarily means that the debtor violated the Consumer Fraud Act is buttressed by the strong language of the New Jersey Supreme Court's opinions, *Cox*, 138 N.J. at 16, 647 A.2d 454, and *Kugler v. Romain*, 58 N.J. 522, 279 A.2d 640 (1971), which emphasize the remedial nature of the Act and the desire by the legislature to protect consumers. "Although initially designed to combat 'sharp practices and dealings' that victimized consumers by luring them into purchases through fraudulent or deceptive means, the Act is no longer aimed solely at 'shifty, fast-talking and deceptive merchant[s]' but reaches "nonsoliciting artisans" as well. Thus the Act is designed to protect the public even when a merchant acts *in good faith.*" *Cox*, 138 N.J. at 16, 647 A.2d

454 (emphasis added). Accordingly, the Consumer Fraud Act is applicable to this case, the debtor has committed fraud forbidden by the Act and is therefore liable for treble damages.

■■■ Alternatively, this Court also affirms the bankruptcy court's conclusion that the debtor committed an "unconscionable commercial practice," another of the "affirmative acts" of the Consumer Fraud Act which do not require "intent." The *Kugler* Court held that "[t]he standard of conduct that the term 'unconscionable implies is lack of good faith, honesty in fact and observance of fair dealing.'" *Id.* at 544, 279 A.2d 640. The reckless disregard for the truth the debtor displayed when he set rents above the legal limits—despite his knowledge that the Hoboken Rent Control Ordinance governed his property, despite his repeated discussions with other landlords about seemingly every other aspect of that Ordinance except for its limits on his ability to set rents to new tenants, despite his two successful petitions to the Rent Control Board to surcharge his tenants for increases in taxes and water charges—coupled with the relative lack of education of the plaintiffs leads this Court to conclude that the debtor acted in bad faith and engaged in an unconscionable commercial practice. Consequently, on this ground, he has violated the Act and is liable to plaintiffs for treble damages.

### IV. The Dischargeability of the Treble Damage Award

■■■ The debtor argues that the mandatory treble damages that are imposed upon him for violating the New Jersey Consumer Fraud Act, *Cox*, 138 N.J. at 24, 647 A.2d 454, are punitive and therefore dischargeable under 11 U.S.C. § 523(a)(2)(A). He acknowledges that the Third Circuit has not ruled on whether punitive damages are dischargeable under this provision, and that the other Circuits are split over this question. He thus urges this Court to follow the Ninth Circuit's *In re Levy*, 951 F.2d 196 (9th Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992), which held that punitive damages are dischargeable. The plaintiffs counter that, even though the Bankruptcy

Court addressed this issue, the debtor failed to raise it below and consequently has waived his claim. They further argue that the statutory treble damages are not punitive damages under New Jersey law and therefore are non-dischargeable under § 523(a)(2)(A). And, even if this Court considers this award punitive, it should follow the Eleventh Circuit's *In re St. Laurent,* 991 F.2d 672 (11th Cir.1993), which held that punitive damages are not dischargeable under § 523(a).

As a threshold matter, this Court finds that the debtor has not waived this argument. Though he did not raise it below, the Bankruptcy Judge addressed it and it is part of the record on appeal to this Court. Accordingly, it will be addressed on the merits.

Plaintiffs contend correctly, the Court concludes, that statutorily imposed treble damages obtained by false pretenses are not dischargeable under § 523(a)(2)(A). Their rationale is that statutory damages and punitive damages are different under New Jersey law. However, because the Court is construing the terms of § 523(a)(2)(A), a federal statute, this is a matter of federal, not state law. *See, e.g., Molzof v. United States,* 502 U.S. 301, 305, 112 S.Ct. 711, 714, 116 L.Ed.2d 731 (1992) ("the meaning of the term 'punitive damages' as used in [the Federal Tort Claims Act], a federal statute, is by definition a federal question").

The issue before the Court, therefore, is whether non-compensatory statutory damages are dischargeable under § 523(a)(2). In *In re Levy,* 951 F.2d at 198, the Ninth Circuit examined the language of this provision, which precludes the discharge of any debt "to the extent obtained by" fraud, false pretenses or a false representation. It decided that the jury's punitive damage award was dischargeable because it did not constitute a debt obtained by fraud—only the amount of compensatory damages which were actually obtained by fraud could not be discharged. *Id.* The Eleventh Circuit in *In re St. Laurent,* 991 F.2d at 678, reached the opposite conclusion. That Court focused on "debt" and whether that term was sufficiently broad to include a judgement requiring the

payment of both compensatory and punitive damages. *Id.* at 679. It concluded that it is, and therefore that such a judgement is not dischargeable. *Id.* In so doing, *St. Laurent* relied upon the "fresh start" policy of the Bankruptcy Code which enables insolvent debtors to reorder their affairs and to start a new life unencumbered by debt. *Id.* at 680. However, this "opportunity for a completely new beginning" may only be availed by the "honest but unfortunate debtor." *Id.* (citing *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991)). Consequently, a debtor liable for punitive damages because of his or her fraud should not be permitted to have that debt discharged. *Id.*

This Court finds the *St. Laurent* view to be the more cogent, and accordingly affirms the bankruptcy court's decision. In this case discharge is particularly inappropriate. Both *St. Laurent* and *In re Levy* concern situations where either a judge or a jury exercised discretion to award punitive damages. Here the New Jersey Consumer Fraud Act mandates that treble damages be imposed for violating its terms. Unlike a discretionary imposition of punitive damages, the non-compensatory aspect of the award in this case was codified and therefore entirely foreseeable by the debtor at the time he made the false representations to the plaintiffs. In this sense it may properly be seen as the debt he incurred through his conduct, rather than as punishment.

The treble damage award under the New Jersey Consumer Fraud Act is not dischargeable in bankruptcy.

### CONCLUSION

For the reasons stated it is on January 24, 1996:

ORDERED that decision of the bankruptcy court is **affirmed.**

**SO ORDERED.**